Tammy **LATHAM**, Appellant,

v.

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,**
Appellee.

No. 01–04–00628–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 7, 2005.

342

Brian J. Fischer, Shawn Casey, Shawn Casey & Assoc., Houston, for Appellant.

Sandra D. Hachem, Senior Asst. County Atty., for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BLAND.

## OPINION

JANE BLAND, Justice.

Tammy Latham appeals the trial court's order terminating her parental rights to her minor children, K.L., J.L., and H.T. Latham contends (1) she is entitled to a reversal due to the trial court's delay in appointing her appellate counsel; and (2) the evidence is legally and factually insufficient to support the trial court's termination of her parental rights to her three minor children. We affirm.

## Facts

Latham married Jeffrey Latham in December 1993. Latham testified that she

was aware of his criminal history when they married, but that she did not know that one of his prior convictions included injury to a child, two years earlier, in August 1991. Jeffrey and Latham had their first child, K.L., in July 1995. Latham gave birth to their second child, J.L., in December 1996.

Although Latham denies using illegal drugs before the birth of her children, she testified that both she and Jeffrey began using cocaine and marihuana after the children were born. Latham testified that they did not abuse drugs in the presence of their children. Latham admits that she has a drug problem and that she knowingly engaged in a lifestyle that could injure her children.

Latham was convicted for possession of cocaine and for theft after the birth of her two children. As of the time of trial, she was in jail for a third charge, the unauthorized use of a motor vehicle. Thus, she has been incarcerated three times since her first child was born in 1995. Latham admits that while incarcerated she is unable to protect her children and provide for their physical and emotional needs. Further, she admits that engaging in criminal activity places her children in danger.

The Texas Department of Family and Protective Services ("DFPS" or "the agency") became involved with Latham's children in November 2001, after receiving a referral that K.L. had been left unattended at school. The school police picked up K.L. at 5:30 p.m., over three hours after school ended for the day. Latham explained that she was out of town and the person responsible for picking up K.L. from school had the days confused, but she admitted she failed to call and verify that the person actually picked up K.L. During the time the agency was involved with Latham's children, a court ordered that Latham and her husband submit to drug testing. Both tested positive for cocaine in February 2002. Her first arrest for cocaine possession happened as she was working with the DFPS on a family service plan to reunite her with her children. Latham admits that she and her husband used crack cocaine on a daily basis in the first half of 2002.

In April 2002, the Lathams agreed in a temporary order that neither of them was fit to be the primary caretaker of the children. The order named the DFPS as the temporary sole managing conservator of the children. Latham agreed to pay court-ordered child support, in the amount of $187.50 per month, beginning August 2002. In May 2003, the Attorney General moved to enforce the child support order because Latham was in arrears in the amount of $1,800. During the time the DFPS cared for the children, Latham made one payment. She explained she was unable to pay the balance, due to her numerous incarcerations.

The agency's Children's Crisis Center evaluated Latham in August. She admitted to the agency's evaluator that she had a problem and that her husband used and sold illegal drugs. Latham also revealed to the evaluator that her father had molested her as a child. Despite her own sexual abuse by her father, she and her children currently lived in her father's home. Latham also admitted that her father supplied her with cocaine. She testified that she did not leave her children alone with her father, and assured she or her mother was also in the home. Latham agreed with the agency that it would have been better for her children if they did not reside with her father, but she stated that they did not have anywhere else to go.

Latham signed a family service plan with the agency in September 2002. In her plan, she agreed to complete the DFPS requirements in order to be reu-

nited with her two children. The agency's plan required Latham to (1) obtain a psychological evaluation and follow its recommendations; (2) complete a drug and alcohol assessment and follow the recommendations of the service provider; (3) locate and maintain proper housing; (4) obtain gainful employment; and (5) attend parenting classes. Latham lived with her mother until she was once again incarcerated, and started attending parenting classes, which she did not complete.

In late 2002, Latham began a relationship with Steven Toney and became pregnant with his child. During this period, she returned to reside at her father's home. Toney went to Latham's father's home to find her, and her father shot and killed Toney. During this pregnancy, Latham used illegal drugs for at least a month. Latham gave birth to her third child, H.T., on June 30, 2003, while in jail on the cocaine possession conviction. Although K.L. and J.L. remained in the agency's custody at the time of H.T.'s birth, Latham did not alert the agency of the birth of H.T. Instead, Latham's mother came to the jail and picked up H.T.

In late August 2003, Latham completed her jail time, but she did not contact the agency about resuming her service plan. Two months later, in October 2003, police arrested Latham for the unauthorized use of a motor vehicle, a state jail felony. At the time of her parental termination trial, the state jail felony charge had not been tried and she remained incarcerated. In November 2003, Latham and the agency amended the temporary order to include H.T.

The trial court appointed counsel for Latham on January 9, 2003. After a bench trial, the trial court ordered Latham's parental rights to her three minor children terminated. On February 9, 2004, Latham filed a *pro se* notice of appeal and a request for appointment of appellate counsel. Latham's *pro se* filing does not include a certificate of service, but a letter Latham filed with the trial court indicates that she mailed a copy of her notice of appeal to her trial counsel. The trial court considered the appointment of appellate counsel on March 26, 2004, and signed an order appointing appellate counsel on July 9, 2004.

Latham contends that we should reverse because (1) the trial court unduly delayed in appointing appellate counsel; and (2) legally and factually insufficient evidence supports the judgment.

## Standard of Review

■ In termination of parental rights cases, "due process requires that the State support its allegations by at least clear and convincing evidence" to reduce the risk of erroneous termination. *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982); *In re B.L.D.*, 113 S.W.3d 340, 353–54 (Tex. 2003). "'Clear and convincing evidence'" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002) (quoting TEX. FAM.CODE ANN. § 101.007 (Vernon 2002)); *see also In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002) (discussing the Texas Supreme Court's and the Legislature's use of the same definition of "clear and convincing evidence"); *Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 688 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

■ The standard for appellate review of legal sufficiency in termination-of-parental-rights cases is whether the evidence is such that a fact finder reasonably could form a firm belief or conviction about

**346**

the truth of the matter on which the State bears the burden of proof. *In re J.F.C*, 96 S.W.3d at 266. In reviewing a challenge to the factual sufficiency of the evidence, we consider the evidence that the fact finder reasonably could have found to be clear and convincing. *Id.* (citing *In re C.H.*, 89 S.W.3d at 25). An appellate court should not reverse if, considering all of the evidence in the record, the fact finder reasonably could have formed a firm conviction or belief that the parent committed one of the alleged grounds of termination and that the termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d at 27.

The natural right that exists between parents and their children is one of constitutional dimension. *See In re J.F.C.*, 96 S.W.3d at 273; *see also In re C.H.*, 89 S.W.3d at 26. A parent's right to "the companionship, care, custody and management of his or her children" is a constitutional interest "far more precious than any property right." *Santosky*, 455 U.S. at 758–59, 102 S.Ct. at 1397 (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)). In a case terminating parental rights, therefore, we strictly scrutinize the proceedings and strictly construe the law in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985).

### Failure to Promptly Appoint Appellate Counsel

Latham contends that the trial court's delay in granting her request for appellate counsel rendered moot her ability to have an effective appeal, and thus we should reverse the judgment of the trial court. Latham maintains that because she is indigent, her right to appointed counsel continued after the trial court signed her ter-

mination order. She contends that her appointed trial counsel "appeared" to withdraw, and that the trial court failed to appoint her appellate counsel until July 9, 2004, after the deadline for requesting findings of fact and conclusions of law from the trial court.

The DFPS responds that Latham has appellate counsel, and she cannot demonstrate prejudice from trial counsel's failure to request findings of fact and conclusions of law. In its brief, the agency also analyzes Latham's issue to be an ineffective assistance of counsel claim.[1]

In parental termination cases, we look to the Court of Criminal Appeals for guidance in determining when a trial court appoints appellate counsel for an indigent person. In *Smith v. State*, 17 S.W.3d 660, 662–63 (Tex.Crim.App.2000), the Court of Criminal Appeals held that a presumption exists that a party represented by counsel at trial remains represented by counsel during the time for filing a motion for new trial. *See also Oldham v. State*, 977 S.W.2d 354, 362–63 (Tex.Crim.App.1998) (en banc) (op. on reh'g).

Here, Latham's trial counsel never moved to withdraw from the case, and Latham copied trial counsel on her *pro se* notice of appeal. After his appointment, appellate counsel never contended in the trial court that Latham lacked representation post-trial. Thus, no evidence exists that trial counsel ended his representation at the conclusion of the trial, or that he had abandoned Latham. *See Smith*, 17 S.W.3d at 662 (citing *Oldham*, 977 S.W.2d at 362). We also note that Latham filed a *pro se* notice of appeal, which is an indication that she was aware of some of her

---

1. In her briefing to this court, however, Latham does not raise an ineffective assistance of counsel issue, nor does she cite to any authority in support of an ineffective assistance of counsel argument.

appellate rights, "and we presume she was adequately counseled unless the record affirmatively displays otherwise." *Id.* (citing *Oldham*, 977 S.W.2d at 363). If an indigent person entitled to representation is no longer represented by trial counsel, then upon request, the trial court should conduct an inquiry and promptly appoint appellate counsel. Absent any indication in the record that Latham was without counsel, however, we hold that the trial court did not err in delaying the appointment of appellate counsel in this case.

### Legal and Factual Sufficiency of the Evidence

Latham further contends that, as a result of the delay in appellate representation, she was unable to procure the findings of fact and conclusions of law, which hinders her appeal. Her only contention as to the merits of this case, however, is that the evidence is legally and factually insufficient to support the termination of her parental rights to her children on at least "some of the grounds." She notes that the State alleges twenty-two grounds for termination, and that the trial judge could have granted the request for termination on a ground that lacked legally or factually sufficient evidence. With findings of fact and conclusions of law, a hypothetical appeal could attack that ground, and we could not affirm on others supported by evidence, but not "found" by the trial court.

Yet, in reality, the judgment terminating Latham's parental rights expressly specifies that she committed the following four grounds for termination:

(1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;

(2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;

(3) failed to support the children in accordance with the parent's ability during a period of one year ending within the six months of the date of the filing of the petition; and

(4) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months, and: (i) the Department or authorized agency has made reasonable efforts to return the children to the parent; (ii) the parent has not regularly visited or maintained significant contact with the children; and (iii) the parent has demonstrated an inability to provide the children with a safe environment.

*See* TEX. FAM.CODE ANN. § 161.001(1)(D)-(F), (N) (Vernon 2002). We thus conclude, as the trial court's order reflects, that it is these four grounds that the trial court found to be the basis for parental termination.[2] Only one of these findings is necessary for a judgment of termination. *See*

---

2. We recognize that "[f]indings of fact shall not be recited in a judgment." TEX.R. CIV. P. 299a. Neither party complains of this on appeal, however, and the trial court had no pending request for separate findings. In addition, the agency does not contend that Latham waived her right to appellate review of the evidence. We therefore review Latham's legal and factual sufficiency points upon the grounds stated in the trial court's judgment. *See In re U.P.*, 105 S.W.3d 222, 229 n. 3 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (concluding that findings in judgment have probative value, as long as they do not conflict with those in separate documents); *see also Hill v. Hill*, 971 S.W.2d 153, 157 (Tex. App.-Amarillo 1998, no pet.).

*Robinson,* 89 S.W.3d at 687. A court may base a termination of parental rights upon a finding that a parent engaged in conduct described in one of the alleged grounds, plus a finding that termination is in the best interest of the children. *See* TEX. FAM.CODE ANN. § 161.001(1)-(2); *see also In re L.M.,* 104 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2003, no pet.). We thus determine whether the evidence is legally and factually sufficient to support the trial court's finding that (1) Latham knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; and (2) that termination is in the children's best interests.

 "Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See Robinson,* 89 S.W.3d at 686 (citing *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987) and *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex.App.-El Paso 2000, pet. denied)). While "endanger" means more than a "threat of metaphysical injury or the ill effects of a dysfunctional family," it does not require that the conduct be actually directed at a child or that a child suffer an actual injury. *Id.* (citing *Boyd,* 727 S.W.2d at 533); *see also Doyle,* 16 S.W.3d at 394. "Under section 161.001(1)(E), the danger to a child must arise solely by the parent's conduct established by the parent's actions or by the parent's failure to act." *Robinson,* 89 S.W.3d at 686 (citing *Doyle,* 16 S.W.3d at 395). A parent's imprisonment will not, standing alone, constitute endangerment. *Id.* (citing *Boyd,* 727 S.W.2d at 533). If the evidence, including imprisonment, however, shows a course of conduct that endangers the physical or emotional well-being of the child, then such facts support a finding under section 161.001(1)(E). *Id.* (citing *Boyd,* 727 S.W.2d at 533–34).

 Latham has a history of illegal drug use, criminal activity, and imprisonment. Latham admitted that both she and her husband used drugs in their home, and that she realized these activities endangered her children. These activities continued after the birth of her children, and after Latham agreed not to commit such acts during her agreement to follow the agency's plan for reunification with her children. Here, Latham knew her parental rights were in jeopardy, yet she failed to comply with the agency's family reunification plan. She also continued to use illegal drugs, even during her pregnancy with H.T. We hold that legally and factually sufficient evidence exists to support the trial court's finding of endangerment. *See id.* at 687 n. 9 (appellant's use of drugs during pregnancy may be considered endangering a child).

 In determining the best interest of a child, courts examine a number of factors, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual; (6) the plans for the child by the parent and the individual seeking custody; (6) the stability of the home; (7) the parent's acts or omissions that indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for parent's acts or omissions. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976). The *"Holley"* factors are not exhaustive; some listed may not apply, while others not included on the list may also be appropriate. *In re C.H.,* 89 S.W.3d at 27. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination

is in the child's best interest. *Id.* at 28. Using these factors, we examine whether the evidence is legally and factually sufficient to support the trial court's finding that termination is in the children's best interests, as discussed below.

The agency's caseworker testified that K.L. has many special needs, including mental health, psychological, and medical needs. K.L. has a thyroid problem, mood disorder, bipolar disorder, borderline intellectual functioning, post-traumatic stress disorder, and attention deficit disorder. As a result of these needs, K.L. receives psychotherapy, individual therapy, speech therapy, and medication. The caseworker further testified that K.L.'s current placement in a residential treatment center is meeting her physical and emotional needs, and that it is in K.L.'s best interest to remain in the treatment center. J.L. and H.T. do not have any special needs, but the caseworker testified that their needs are being met in their placement home and that they are doing exceptionally well.

Latham testified that both she and her husband used cocaine on a weekly basis during the time that they, along with K.L. and J.L., lived at her mother's home. Latham ingested cocaine during her pregnancy with H.T., and the child tested positive for cocaine at birth. Latham continued to use drugs after giving birth to H.T., knowing that she needed to remain drug-free to be reunited with her children. The trial court could have considered the danger to the children from an inconstant relationship with a mother, who because of her drug use and incarceration, disrupts any permanency or stability for the children. The trial court reasonably could have inferred that Latham's risk of relapse is high, given that she continued to ingest drugs while her children lived in protective custody, and while she sought to be reunited with them.

Latham's drug abuse and failure to comply with the agency's reunification plan is also evidence of an improper parent-child relationship. Her drug abuse during her pregnancy endangered H.T.'s well-being. Latham testified that she knew that her drug use endangered her children; yet, she continued to use drugs. To counter this evidence, Latham testified that she needed to be with her children and she loved them very much. She further testified that, although her history does not support her contention that she could be a good mother, she would like another chance to be with her children. We defer to the trial court's role in assessing the weight and credibility of this evidence, cast against Latham's previous history of abuse and neglect. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002).[3]

The record contains little evidence of Latham fulfilling any of her parental responsibilities. In one instance, K.L. was left alone for nearly three hours after school. Her parental responsibilities have been performed by others, namely the agency and foster parents. Latham has

---

**3.** In a parental termination case decided after *In re C.H,* the Texas Supreme Court further clarified the amount of deference that appellate courts should give to a factfinder's determinations. *In re J.F.C.,* 96 S.W.3d at 266 ("To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.").

350

not demonstrated that she possesses the ability to maintain a stable home, maintain employment, and to remain drug-free, nor the ability to live without incarceration. While in the free world, she visited her children five times, and only once in the eighteen months before her termination trial. The caseworker testified that Latham failed to contact her to schedule visits with her children. The record does not contain any evidence of Lathams' plans for her children.

As of the date of trial, Latham did not have a home and was awaiting trial for her state jail felony charge. She admitted that despite being molested by her father as a child and as a teenager, she continued to live with him during the eighteen months preceding her incarceration and the parental termination trial. Latham also admitted using drugs in both her mother's home and her father's home. Latham has failed to complete any parenting or substance abuse classes. Even after K.L. and J.L. were taken into protective custody, Latham refused to complete the courses the agency recommended.

In contrast, the caseworker for the agency testified that J.L. and H.T. are adoptable, and that adoptive parents exist. The caseworker testified that J.L. and H.T. reside in a foster home, and due to K.L.'s special needs, she is in a residential treatment center. She further testified that, with continued treatment, K.L. could be adopted. The caseworker also testified that J.L. and H.T. reside together in a foster home and are doing "exceptionally well." Their foster parents are very interested in adopting the two children.

Evaluating these facts under *Holley*, we hold that legally and factually sufficient evidence supports the trial court's finding that termination of Latham's parental rights is in the best interest of these three children. *See Holley*, 544 S.W.2d at 371–72.

### Conclusion

We conclude that (1) the trial court did not err in its delay in appointing appellate counsel because Latham fails to demonstrate that her trial counsel withdrew or that she was otherwise without representation immediately after trial; and (2) the delay in appointment of appellate counsel did not hinder the presentation of this appeal because the evidence is legally and factually sufficient to support the termination of her parental rights on grounds set forth in the trial court's order of termination. We therefore affirm the judgment of the trial court.