Opinion issued October 30, 2008









Opinion issued October 30,
2008

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00309-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



REBECCA ESPINOSA, Appellant

 

V.

 

TEXAS DEPARTMENT OF FAMILY & PROTECTIVE SERVICES,
Appellee

 

 



On Appeal from the 306th District Court

Galveston County, Texas

Trial Court Cause No. 07CP0035

 

           








 



MEMORANDUM OPINION

           Rebecca Espinosa appeals
the trial court’s order terminating her parental rights to her daughters A.O.
and A.E.  In five issues, Espinosa contends that the evidence was legally and
factually insufficient to support the following findings:  (1) that she engaged
in conduct or knowingly placed the children with persons who engaged in conduct
that endangered the physical or emotional well-being of the children; (2) that
she constructively abandoned the children while they were in the temporary
conservatorship of the Department of Family and Protective Services; (3) that
she failed to comply with the provisions of a court order that specifically
established the actions necessary for her to obtain the return of her children;
(4) that she used a controlled substance in a manner that endangered the health
and safety of the children and failed to complete a court-ordered substance
abuse treatment program; and (5) that the termination of the parent-child
relationship between Espinosa and her daughters is in the best interests of the
children. We conclude that the evidence is legally and factually sufficient to
support the trial court’s order and therefore affirm.

Background

In April 2007, the Texas Department
of Family and Protective Services (TDFPS) of Galveston County removed A.O. and
A.E. from the custody of their maternal grandmother after the grandmother’s
drug test was positive for cocaine.  Rebecca Espinosa had voluntarily left her
children in her mother’s care and had given her mother a power of attorney over
the children.  TDFPS later determined that the conditions of the grandmother’s
home were dangerous for the children due to the grandmother’s drug use,
allegations that the girls were unsupervised and underfed, and that the
grandmother was selling their food stamps to buy drugs.  TDFPS placed the girls
in temporary foster care while case workers searched for a relative to care for
the children.  Following the children’s removal, in April 2007, TDFPS and
Rebecca agreed to a family service plan that required Rebecca to pay $80 per
month in child support, have a psychological and a parenting assessment, submit
to random drug testing, and maintain stable housing.  From April 2007 until
September 2007, Rebecca did not comply with the plan other than to submit to
three or four drug screenings.  

After a month in foster care, in May
2007, TDFPS placed the girls with Danny and Tessa Sendejas, Rebecca’s
biological father and step-mother.  During the time the girls were with the
Sendajases, Rebecca rarely called or visited and never paid child support.  She
tested positive for drugs three times between April and September 2007, and she
admitted in her own testimony that she used drugs until September 2007.  The
girls stayed with the Sendejases until November 2007, when TDFPS placed them
with Eugene De Los Santos and his girlfriend Elizabeth Waite.  De Los Santos is Rebecca Espinosa’s former boyfriend, who once thought that he was A.E.’s
biological father, though this was later proven incorrect.  While the girls
were with De Los Santos, Rebecca rarely paid child support and saw them
infrequently, citing problems with getting in touch with De Los Santos and
getting De Los Santos to cooperate with her.  In January 2008, TDFPS removed
A.O. from the De Los Santos home at De Los Santos’s request and placed her in
temporary foster care because of behavior problems at home.  At the time of the
termination hearing, A.E. remained with De Los Santos and Waite, and A.O.
remained in foster care.

Rebecca entered inpatient drug
rehabilitation program in November 2007, after reportedly stopping her drug use
in September 2007.  She completed two weeks of inpatient treatment and was
released, and began outpatient care but was discharged for non-attendance. 
Thereafter, she attended a few parenting classes, as required in the service
plan, but failed to complete them.  

Rebecca has had her parental rights
terminated with respect to another child because she used drugs while she was
pregnant with the child, and failed to comply with a TDFPS service plan. 
Rebecca was also pregnant at the time of trial.

On April 7, 2008, after a bench
trial, the court terminated Rebecca Espinosa’s parental rights with respect to
A.O. and A.E.  The trial court relied upon Sections 161.001(1)(E), (M), (N),
(O), and (P) of the Texas Family Code.  See Tex. Fam. Code Ann. §§ 161.001(1)(E), (M), (N), (O), (P)
(Vernon 2007).

Standard of Review

The natural right that exists between
parents and their children is one of constitutional dimension.  See In re
J.F.C., 96 S.W.3d 256, 273 (Tex. 2002) (examining constitutional
implications of terminating parental rights).  A parent’s right to “the
companionship, care, custody and management of his or her children” is a
constitutional interest “far more precious than any property right.”  Santosky
v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982) (quoting Stanley
v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1972)).  Thus, in a
case terminating parental rights, we carefully scrutinize the proceedings and
strictly construe the law in favor of the parent.  Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  

In proceedings brought under Section
161.001 of the Family Code, TDFPS must establish one or more of the acts or
omissions enumerated under the first subdivision of the statute and must also
prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (Vernon
2007); In re J.L., 163 S.W.3d 79, 84 (Tex.2005); In re L.M., 104
S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

          Due process requires that
clear and convincing evidence support a finding of termination.  Santosky,
455 U.S. at 747-48, 102 S. Ct. at 1391–92; In re B.L.D., 113 S.W.3d 340,
353–54 (Tex. 2003).  To be legally or factually sufficient under the clear and
convincing standard, the evidence must be such that a fact-finder reasonably
could form a firm belief or conviction about the truth of the matter on which
the State bears the burden of proof.  In re J.L., 163 S.W.3d at 84; Robinson
v. Tex. Dep’t of Protective & Regulatory Servs., 89 S.W.3d 679, 688 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

In a legal sufficiency challenge, we
review the evidence in a light most favorable to the trial court’s finding, and
assume the fact-finder resolved disputed facts in favor of its finding if a
reasonable fact-finder could do so.  In re J.L., 163 S.W.3d at 85.   We
disregard any evidence that a reasonable fact-finder could have disbelieved,
but we do not disregard undisputed facts.  Id.  In reviewing a challenge
to the factual sufficiency of the evidence, we must give due consideration to
the evidence that the fact-finder reasonably could have found to be clear and
convincing, considering all the evidence in the record, including evidence in
support of and contrary to the trial court's findings.  In re J.F.C., 96
S.W.3d at 266.   

Discussion

          The trial court terminated
Rebecca Espinosa’s parental rights on the grounds that she

(1)
Engaged in conduct or knowingly
placed the children with persons who engaged in conduct which endangers the
physical or emotional well-being of the children.  Tex. Fam. Code Ann. §
161.001(1)(e).

 

(2)
Had her parent-child relationship
terminated with respect to another child based on a finding that the mother’s
conduct was in violation of § 161.001(1)(D) or (E), Texas Family Code, or
substantially equivalent provisions of the law of another state. Tex. Fam. Code Ann. § 161.001(1)(M).

 

(3)
Constructively abandoned the children
who have been in the permanent or temporary managing conservatorship of the
Department of Family and Protective Services or an authorized agency for not
less than six months and: (1) the Department or authorized agency has made
reasonable efforts to return the children to the mother; (2) the mother has not
regularly visited or maintained significant contact with the children; and (3)
the mother has demonstrated an inability to provide the children with a safe
environment.  Tex. Fam. Code Ann.
§ 161.001(1)(N).

 

(4)
Failed to comply with the provisions of a court order
that specifically established the actions necessary for the mother to obtain
the return of the children who have been in the permanent or temporary managing
conservatorship of the Department of Family and Protective Services for not
less than nine months as a result of the children’s removal from the parent
under Chapter 262 for the abuse or neglect of the children.  Tex. Fam. Code Ann. § 161.001(1)(O).

 

(5)
Used a controlled substance, as
defined by Chapter 481, Health and Safety Code, in a manner that endangered the
health or safety of the children, and (1) failed to complete a court-ordered
substance abuse treatment program; or (2) after completion of a court-ordered
substance abuse treatment program continued to abuse a controlled substance.  Tex
Fam. Code Ann. § 161.001(1)(P).

 

Only one of these findings is
necessary to support an order of termination.  See Robinson, 89 S.W.3d
at 687.  A court must base a termination of parental rights upon a finding that
a parent engaged in conduct described in one of the alleged grounds, plus a
finding that termination is in the best interest of the children.  See Tex. Fam. Code Ann. § 161.001(1)–(2); Latham
v. Dep’t of Family & Protective Servs., 177 S.W.3d 341, 349 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  

Rebecca argues that the evidence is
legally and factually insufficient to support the court’s findings under
Sections 161.001(1)(E), (N), (O) and (P).  Rebecca does not, however, contest
the trial court’s finding under Section 161.001(1)(M), the provision allowing
termination if a parent has previously had another parent-child relationship
terminated.  Because the trial court’s finding under Section 161.001(1)(M) is
sufficient to support its order, we discuss it and the best interests of the
children.

At the time of this trial, Rebecca’s
parent-child relationship had been terminated with respect to her fourth child,
based on a finding that her conduct was in violation of Section 161.001(1)(D)
and (E).  During Rebecca’s pregnancy with her fourth child, A.M., she tested
positive for drug use, and TDFPS took temporary custody of the child at birth. 
She then failed to comply with the court-ordered provisions imposed as a
condition of regaining custody, and the trial court terminated the parent-child
relationship.  Where, as here, a prior decree of termination as to another
child is properly admitted into evidence, the State need not establish the
underlying basis for termination, here Section 161.001(1)(D) and (E).  In
the Interest of J.M.M., B.R.M., & W.T.M., Children, 80 S.W.3d 232, 243
(Tex. App.—Fort Worth 2002, pet. denied).  We hold that sufficient evidence
supports at least one of the grounds on which the trial court terminated
Rebecca’s parent-child relationship with A.O. and A.E.  Moreover, Rebecca did
not assail that ground on appeal.  We now consider the best interest of the
children.

In determining the best interest of a
child, courts examine a number of factors including the following: (1) the desires
of the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the
future; (4) the parental abilities of the individual seeking custody; (5) the
programs available to assist the individual; (6) the plans for the child by the
parent and the individual seeking custody; (7) the stability of the home; (8)
the parent’s acts or omissions that indicate that the existing parent-child
relationship is not a proper one; and (9) any excuse for the parent’s acts or
omissions.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  The Holley
factors are not exhaustive; some listed may not apply, while others not
included on the list may also be appropriate.  In re C.H., 89 S.W.3d at
27.  Using several of these factors, we examine whether the evidence is legally
and factually sufficient to support the trial court’s finding that termination
is in A.O. and A.E.’s best interests.

The Desires and Needs of the Children

          A.O. has expressed a desire
to live with her mother, and she told the court psychologist that it makes her
sad that she doesn’t get to see her mother often.  She also said that she
worries about her mother when she isn’t able to communicate with her and
worried about her mother’s ability to overcome her drug addiction.  A.E. told
the court psychologist that she enjoyed visiting her mother, but she also liked
living with De Los Santos.  The TDFPS case worker testified that both girls
were happy with De Los Santos and Waite, and that A.O. was sad when she had to
leave and go into foster care.

The psychologist further testified
that the girls need an emotionally stable environment where they are supported
and know what to expect day-to-day.  The psychologist further testified that
the girls were both friendly and polite, but that they would both need therapy
in the future to help them learn to deal with the transitions they have
experienced.  A.O. has more serious emotional problems than A.E. in that she
has some symptoms of depression, some self-esteem problems, and anger issues,
which would require more therapy.

The record contains evidence that
Rebecca has a criminal record for two assaults causing bodily injury, two
probation violations, possession of marijuana, and theft by check.  The
evidence supports a reasonable inference that a person with such a criminal
history and who had a substance addiction, who used drugs while pregnant,
endangering her child, and used them despite agreeing not to as part of a
service plan, cannot provide an emotionally stable environment.  

          Despite the girls’ desire
to spend time with their mother, nothing in the record indicates that Rebecca
can meet the girls’ needs.  When asked about their needs, Rebecca said that
they needed her, their home, and the family that they know, yet she has not
provided a home for them since well before their placement in foster care, and
before that time the girls demonstrated signs of neglect with respect to their
hygiene and clothing.  She testified that she had lived in around seven
different places, sometimes with her mother, sometimes with her stepfather, and
with three or four different boyfriends, in the eight years since A.O. was
born, and she voluntarily gave up custody of the girls to different relatives
in that time.  These children have not lived with Rebecca since December 2005. 
During the year between when the girls were placed in TDFPS custody and the
termination hearing, she rarely called or visited.  Rebecca testified that she
was willing to continue therapy, but she failed to complete her own outpatient
therapy for her addiction and expressed during her treatment for her addiction
that she did not think she needed it.  Her criminal record and her failure to
complete drug treatment leave a reasonable inference that Rebecca would not
provide a stable environment for the girls.  This factor weighs in favor of
termination.

The Emotional and Physical Danger to
the Children

          Rebecca continued to use
drugs after the children were removed from her mother’s custody in April 2007,
until September 2007, despite the fact that the family service plan required
that she be drug-free.  Rebecca also had used drugs before she sent the girls
to live with her mother and while pregnant.  Furthermore, Rebecca has been
arrested and jailed at least five times since A.O. was born, twice for assault
and once for a drug offense.  The trial court could have considered the danger
to the girls from an inconstant relationship with their mother, who, because of
her drug use and incarceration, disrupts any permanency or stability for the
children.  See Latham, 177 S.W.3d at 349.  The record indicates that
Rebecca has failed to participate in ongoing support for her drug problem, and,
from this, the trial court could infer that her risk of relapse is high. 
Rebecca admitted that she believes she has endangered her children
emotionally.  This factor weighs in favor of termination.

Parental Abilities and Available
Programs

          The record contains little
evidence of Rebecca fulfilling any parental responsibilities for A.O. and
A.E..  Her responsibilities have largely been performed by others—first her
mother, who was unsuitable, and then her biological father and stepmother, De
Los Santos and Waite, and foster parents through TDFPS placement.  In the time
these girls have been in TDFPS custody, Rebecca has rarely called or visited
them, nor has she regularly called her TDFPS case worker to ask about the
girls’ well-being or request a visit.  When asked why she had not visited, she
said there was really no reason.  She paid child support infrequently, despite
managing to purchase drugs with her income.  As evidence of her support of the
children, she cites one instance where she brought the girls some school
uniform tops and tennis shoes, the fact that she bought them Christmas
presents, and that she has made sure her home includes a room and furnishings
for them.  The psychological and parenting evaluation suggests that Rebecca has
few parenting skills or strategies.

          The family service plan
includes parenting classes, but Rebecca failed to attend any of them between
April 2007 and November 2007.  Thus, it is apparent that although services are
available to her, Rebecca may not take advantage of them.  The same is true of
drug rehabilitative services.  This factor weighs in favor of termination.

The Stability of the Home

          As discussed, the history
of this case shows previous instability in the home.  Rebecca claims to have
established a stable home now, but she has failed to have her social worker
evaluate her home as required in the family service plan.  Nor has Rebecca
complied with other aspects of the service plan or made much effort to parent
these children.  This factor weighs in favor of termination.

The
Parent’s Acts or Omissions that Indicate that the Parent-Child Relationship is
not Proper and Any Excuse for those Acts or Omissions

 

          Rebecca’s drug abuse and
failure to comply with the family service plan is evidence of an improper
parent-child relationship.  See Latham, 177 S.W.3d at 349.  During a
substantial part of the time the girls were in DFPS custody, Rebecca continued
to abuse drugs.  She offered no reason for her failure to call or visit the
girls more often.  She claimed that part of the reason she failed to attend
inpatient drug rehabilitation earlier was that she had to wait for a bed to
open up, but she did not seek inpatient services for the first five months that
TDFPS had custody of the girls.  She offered work requirements as an excuse for
her failure to attend outpatient drug rehabilitation.  Rebecca’s criminal
history, which includes two assaults and a drug offense, is evidence of an
improper relationship.  See Yonko v. Texas Dep’t of Family & Protective
Servs., 196 S.W.3d 236, 244 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Rebecca testified that this time it
would be different because she stopped using drugs, and that she would keep the
girls away from bad influences, including her own mother, with whom she remains
in contact.  She testified that she would participate in any therapy that the
girls needed.  She also testified that she wanted the girls to have a better
life, and that she thought a better life would be living with her as opposed to
foster care or living with De Los Santos.  We defer to the trial court’s role in
assessing the weight and credibility of this evidence cast against Rebecca’s
previous history.  See Latham, 177 S.W.3d at 349.  This factor also
weighs in favor of termination.

Conclusion

Clear and convincing evidence
justifies the trial court’s termination decision.  We conclude that legally and
factually sufficient grounds exist under Section 161.001(M) of the Family Code
to terminate Rebecca Espinosa’s parental rights to A.O. and A.E., and under the
Holley factor analysis, legally and factually sufficient evidence
supports the trial court’s finding that termination of Rebecca’s parental
rights is in the best interest of these children.

 

 

                                                          Jane Bland

                                                          Justice

 

 Panel consists of Judges Jennings,
Hanks, and Bland.