**Opinion issued January 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00720-CV

———————————

## IN THE INTEREST OF A.T.W., JR., Child

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2016-04062J

---

## MEMORANDUM OPINION

This is an appeal from a decree terminating a mother's parental rights and appointing the Department of Family and Protective Services as sole managing conservator of her child. The mother contends that the evidence was legally and factually insufficient to support the trial court's termination of her parental rights. Because the evidence is sufficient to support the trial court's decree, we affirm.

**Background**

About two hours after midnight, on July 2, 2016, appellant M.J. was driving with her then two-year-old son unbuckled in the backseat. M.J.'s car drifted across three lanes of traffic and slammed into a pole. The child flew through the car before ending up pinned at the pelvis by the passenger-side dashboard. The child, A.T.W., sustained a fractured femur, tibia, and fibula, a pulmonary contusion, and a liver laceration. On the arrival of emergency services, the child was airlifted to a nearby hospital. The mother claimed she had a small amount of alcohol earlier in the night, and she passed a field-sobriety test administered by responding officers. Subsequent urine and blood tests at the hospital confirmed that the mother was not under the influence of alcohol but indicated that she had marijuana in her system at a level indicative of daily or chronic use. Although police classified the crash as an accident and did not criminally charge the mother, the Department of Family and Protective Services received a referral of neglectful supervision following the accident.

The Department began its investigation a few days after the accident by interviewing the mother. Although the mother initially could not remember what happened before the accident, she later recollected that shortly before the accident, she was leaning into the backseat to stop A.T.W. from tampering with his seatbelt.

2

The mother explained that she was not under the influence of marijuana during the accident and that she rarely smokes, maybe once every one to two months or longer.

The Department filed its original petition seeking emergency temporary managing conservatorship over A.T.W. on July 12, 2016. The trial court granted the Department's emergency petition and named it as temporary managing conservator. The Department formally served the mother with its petition about two weeks later. That same day, the mother tested positive for cocaine and marijuana. After an adversary hearing, the trial court issued an order that named the Department as temporary managing conservator pending the outcome of the trial. A.T.W. was then placed with his maternal aunt.

The Department created a family-service plan about a week later. The plan's primary goal was to reunify the mother with A.T.W. The plan required the mother to participate in a psychosocial assessment, individual counseling, and a substance-abuse assessment; attend all Child Protective Services' related meetings, court hearings, and scheduled visits with the child; maintain stable housing and employment; participate in random drug and alcohol testing; and successfully complete a six-to-eight week parenting course. The trial court later ordered the mother's compliance with this plan.

3

After the trial court made the mother's compliance with the family-service plan an order of the court, the mother passed a number of drug tests. But on December 15, 2016, while she was pregnant with another child, she tested positive for cocaine and marijuana. Two weeks after that child was born, the mother failed another drug test, testing positive for cocaine at a level indicating multiple uses.[1]

Meanwhile, A.T.W. was staying with his aunt. The Department received a report that he was missing and that his mother had taken him. According to the aunt, however, the mother did not take A.T.W. from her. After a request from the Department, the trial court issued a writ of attachment to get the child back into the Department's possession. Three days after the trial court issued the writ, A.T.W. and his mother showed up at his paternal great-grandmother's home. After receiving a call from the great-grandmother, the Department picked up A.T.W. and placed him in a foster home. Less than a week later, the mother tested positive for cocaine and marijuana.

The Department then filed a permanency report with the trial court. The Department explained that although the mother had provided proof of stable housing and income; attended court hearings; and complied with the family-service

---

[1] Unfortunately, the newborn died on April 10, 2017. The child's death was caused by sudden infant death syndrome.

plan by completing a psychosocial assessment, psychological evaluation, substance abuse assessment, substance abuse counseling, parenting classes, and random drug tests, she failed multiple drug tests, including one while she was pregnant. The Department explained that its goal had changed and that it was now aiming to have one of A.T.W.'s relatives adopt him. It recommended that the trial court terminate the mother's parental rights. It noted that A.T.W.'s paternal grandmother expressed a desire for custody but that it had yet to conduct a home study for that grandmother.

A bench trial began on July 13, 2017. The first witness, a Department caseworker, testified to many of the facts described above. The mother testified next. After recollecting the accident and stating that she had no idea how she tested positive for cocaine, she discussed her relationship with A.T.W.'s father.[2] The mother explained that she had lived with the father for some time beginning in 2013, but that she had not been living with him at the time of the accident. She confirmed that she was aware that the father had a criminal history but did not know what his crimes were. Near the end of her testimony, the mother asked the

---

[2] The Department was simultaneously seeking termination of the father's parental rights. The Department's case against the father was based on his marijuana and cocaine use, his criminal history, his failure to attend all visits with A.T.W., and his unwillingness to comply with his family-service plan.

court to give her more time to demonstrate her capability of testing clean and providing the child with a safe and stable home. After the mother left the stand, the trial was continued until November 2017.

During the continuance, the mother failed a drug test, testing positive for marijuana. The mother testified again when trial resumed. She explained that she had not smoked marijuana since the trial was continued and did not know how she tested positive for marijuana. After the mother completed her testimony, the Department caseworker was recalled. The caseworker testified that the Department had completed an updated home study of the paternal grandmother, who had previously had her home study denied because she worked too many hours. The caseworker noted that the grandmother reduced the hours that she worked so that she could spend more time with A.T.W., that she was willing and able to provide a permanent home for him, and that she was willing to protect the child from future abuse or neglect, even if that meant excluding the mother and father from his life. The caseworker explained that the Department was confident in the paternal grandmother's ability to properly care for A.T.W. After brief testimony from the father, trial was continued again until June 2018.

When trial resumed, a newly assigned caseworker was the first to testify. She explained that A.T.W. had recently been taken out of foster care and placed

6

with his paternal grandmother. The caseworker was satisfied that the grandmother was meeting A.T.W.'s physical and emotional needs. The caseworker explained that the grandmother wanted to adopt A.T.W., had plans for the child's future, and was capable of providing the child with a safe environment. Lastly, the caseworker noted that she had recently asked the mother to take a drug test on two occasions, but the mother refused. Ruling from the bench, the trial court terminated the mother's and father's parental rights and named the Department as permanent managing conservator. The mother now appeals.

## Analysis

The mother challenges the sufficiency of the evidence supporting the trial court's termination of her parental rights. Before a trial court may terminate parental rights, the Department must prove by clear and convincing evidence that both a predicate statutory ground under section 161.001(b)(1) exists and that terminating parental rights is in the child's best interests. TEX. FAM. CODE § 161.001(b)(1)(O); *In re B.L.D.*, 113 S.W.3d 340, 353–54 (Tex. 2003). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *see also In re A.C.*, 560 S.W.3d 624, 629–30 (Tex. 2018).

7

The trial court concluded that the Department had established by clear and convincing evidence a predicate statutory ground under section 161.001(b)(1)(E), engaging in conduct that endangers the child's physical or emotional well-being, and section 161.001(b)(1)(O), failing to comply with provisions of the trial court order that specifies the actions necessary for the parent to obtain the return of the child. The trial court also concluded that the Department established by clear and convincing evidence that terminating the mother's parental rights would be in A.T.W.'s best interests. *See* TEX. FAM. CODE § 161.001(b)(2).

On appeal, the mother contends that the trial court's findings rested on legally and factually insufficient evidence. To assess the evidence's legal sufficiency, we ask, "if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *In re A.C.*, 560 S.W.3d at 631; *see also In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that any disputed facts were resolved in favor of the finding as long as a reasonable factfinder could have done so. *In re A.C.*, 560 S.W.3d at 630–31. If "no reasonable factfinder could form a firm belief or conviction" that the matter on which the Department bears the burden of proof is true, then we "must conclude that the evidence is legally insufficient." *In re J.F.C.*, 96 S.W.3d at 266. In reviewing the

8

factual sufficiency of the evidence, we weigh "disputed evidence contrary to the finding against all the evidence favoring the finding;" we "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *In re A.C.*, 560 S.W.3d at 631. The evidence is factually insufficient if, "in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

## I.    Sufficiency of the evidence to support predicate statutory grounds

The mother challenges the legal and factual sufficiency of the evidence that she failed to comply with the provisions of the trial court's order that specified the actions necessary for her to obtain the return of A.T.W. *See* Tex. Fam. Code § 161.001(b)(1)(O). The trial court incorporated the family-service plan into an order that laid out the requirements the mother had to satisfy before A.T.W. would be returned to her. One of those requirements was that the mother submit to all random drug tests. Within the two weeks before trial concluded, a Department caseworker asked the mother to take two separate drug tests, but the mother refused both times. And the mother acknowledged at trial that she refused to take

9

these tests. This was a blatant failure to comply with a provision of the trial court's order specifying the actions necessary for the return of the child.

In her brief, the mother argues that although she failed to comply with the trial court's order with respect to the drug tests, she complied with every other requirement. But partial or substantial compliance with a court-ordered family-service plan is insufficient to avoid termination of parental rights. *In re J.M.T.*, 519 S.W.3d 258, 258 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (collecting cases). We therefore reject the mother's argument.

In light of the entire record, including the undisputed evidence that the mother refused to take two drug tests, we conclude that the trial court reasonably could have formed a firm belief or conviction that the mother failed to comply with a provision of its order that specified the requirements the mother had to satisfy before having A.T.W. returned to her. We therefore overrule the mother's legal and factual sufficiency complaints on the predicate finding under section 161.001(b)(2). And because "[o]nly one predicate finding . . . is necessary to support a judgment of termination," *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), we do not reach the mother's argument that the evidence supporting the trial court's finding on the other predicate statutory ground was legally and factually insufficient.

**II. Sufficiency of the evidence to support best-interest finding**

The mother next challenges the factual and legal sufficiency of the evidence supporting the trial court's finding that the termination of her parental rights would be in A.T.W.'s best interests. To assist us in our analysis of the legal and factual sufficiency of the evidence underlying the trial court's finding that termination was in A.T.W.'s best interests, we evaluate the entire record in light of the factors set out in *Holley v. Adams*: (1) the child's desires; (2) the child's current and future physical needs; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interests; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976). The list of *Holley* factors is not exhaustive, and evidence of all nine factors is not required to support a termination judgment. *Id.* at 372. Evidence that establishes the predicate acts under section 161.001(b)(1) may be relevant to determining the child's best interests. *In re C.H.*, 89 S.W.3d 17, 27–28 (Tex. 2002).

Starting with the second *Holley* factor, which concerns A.T.W.'s present and future emotional and physical needs, the mother acknowledges that his needs are currently being met in his paternal grandmother's home. But she maintains that it "remains speculative whether his future and emotional needs will be met." However, the mother did not present any evidence to support her suggestion that the paternal grandmother will be unable to meet A.T.W.'s needs sometime in the future; in fact, the evidence demonstrates the contrary. The paternal grandmother has taken numerous steps, including reducing the time she spends at work, to ensure that she is able to meet A.T.W.'s needs. The Department conducted a home study and approved of the grandmother's home and had confidence in her ability to continually meet A.T.W.'s needs. Further, one of the stated reasons the Department was interested in placing A.T.W. with the paternal grandmother was so that A.T.W. would remain with his relatives and thereby allowing the mother and father to more easily have access to him than they otherwise would. A child's need for a prompt and permanent home is a paramount consideration in evaluating a child's best interest. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We therefore reject the mother's argument. *See e.g.*, *Martinez v. Harris Cty.*, 526 S.W.3d 557, 565–66 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (rejecting argument as speculative and contrary to the record).

The trial court reasonably could have concluded that the second *Holley* factor weighs in favor of termination.

As for the emotional and physical danger to A.T.W. now and in the future, the mother again argues that it is speculative as to whether he will remain safe with his paternal grandmother. But like her previous argument, she presented no evidence to support her claim. Nothing in the record suggests that the paternal grandmother poses any threat, physical or emotional, to A.T.W. Again, the record suggests the contrary. The grandmother took A.T.W. to the hospital following the car accident to have a plate put into his leg and then later taken out. The grandmother has also taken the necessary steps to adopt A.T.W. and testified and demonstrated to the satisfaction of the Department that she has the resources to do so. The mother, on the other hand, failed to comply with the court's order that was specifically designed to "to reduce [the] risk" of harm to A.T.W. The trial court reasonably could have concluded that the third *Holley* factor weighs in favor of termination.

The fourth *Holley* factor focuses on the parental abilities of the individuals seeking custody. Although the mother completed most of the family-service plan to the satisfaction of the Department, she acknowledges that she "may need additional services to address her parenting deficiencies." Furthermore, the mother

13

demonstrated a true struggle in maintaining her sobriety. Even while she was pregnant with another child, she tested positive for cocaine and marijuana. The trial court reasonably could have concluded that the mother's failure to maintain sobriety and comply with the family-service plan demonstrated her inability to place the needs of her child before her own desires. In contrast, the paternal grandmother has made clear that she is capable of providing A.T.W. with the love, care, and safe, stable environment that he needs. The caseworker that conducted the grandmother's home study testified that the home was a safe place for A.T.W. and that she was comfortable with his placement there. The trial court reasonably could have concluded that the fourth *Holley* factor weighs in favor of termination.

The fifth *Holley* factor instructs courts to consider the programs available to assist the individuals seeking custody in promoting the child's best interests. Regarding this factor, the mother argues that the Department could create a modified family-service plan upon restoration of her parental rights. However, she has not identified any specific service or program that would address the Department's and the trial court's concerns. The mother's argument again relies on speculation. The mother's failure to comply with the original plan over a two-year period and her inability to refrain from using drugs, including while pregnant, allowed the trial court to draw the reasonable conclusion that a modified family-

service plan would likely be unhelpful and therefore conclude that the fifth *Holley* factor weighs in favor of termination.

As for the sixth factor, which considers the plans for the child by the individuals or agency seeking custody, the Department endorses the paternal grandmother as an adopting candidate. The Department notes that the grandmother has reduced her work hours to ensure she has more time to spend with and meet the needs of A.T.W.; she has taken necessary steps to adopt him; she has plans for his future education; and she has the financial and parental capability of providing A.T.W with the safe, stable, and nurturing environment that he needs. As for the mother, her brief simply states, "The mother's plans are unknown." The trial court reasonably could have concluded that this factor weighs in favor of termination.

The next factor considers the stability of the home or proposed home. The mother acknowledges that A.T.W.'s current placement with his paternal grandmother is "reportedly safe, stable, protective and meeting [of all] the child's needs." In light of our previous discussions concerning the paternal grandmother's parental ability and the mother's acknowledgement, the trial court reasonably could have concluded that this factor weighs in favor of termination.

The final two *Holley* factors concern any acts or omissions by the parent indicating that the existing parent-child relationship is inappropriate and any

15

excuse for those acts or omissions. According to the mother, her drug use "is not an indication that [her] relationship with her child is improper in any way," and therefore she advances no excuses for her acts. We disagree. *See, e.g.*, *Latham v. Dep't of Fam. & Prot. Servs.*, 177 S.W.3d 341, 349 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (concluding that mother's drug use and failure to comply with family-service plan indicated an improper parent-child relationship). Specifically, the trial court reasonably could have concluded that the mother's failure to take the final two drug tests and her testing positive on several drug tests, including a test while she was pregnant, are indicative of the mother's current and past inability to place A.T.W.'s needs before her own. Similarly, the trial court reasonably could have concluded that these two factors weigh in favor of termination.

Aside from A.T.W.'s desires, a review of the *Holley* factors reveals only evidence indicating that termination was in his best interests.[3] And A.T.W.'s exact desires are not entirely clear from the record. The mother contends that A.T.W. clearly demonstrated his desire to be with her through his conduct. The only

---

[3]     Our conclusion also finds support in the closing argument of A.T.W.'s guardian ad litem, who stated, "I believe the Mom's history with drugs doesn't make her a capable parent who can provide a safe and stable environment for the child. I believe the paternal grandmother can safely take care of this child and provide for the future; therefore, it is in the best interest to terminate."

example of his conduct that she cites is that A.T.W. would become upset when she left visitation sessions. Nevertheless, no single *Holley* factor is dispositive. *See Holley*, 544 S.W.2d at 372. Viewing the evidence in the light most favorable to the trial court's finding—as we must, *see In re J.F.C.*, 96 S.W.3d at 266—we conclude that the trial court reasonably could have found that any desire by A.T.W. to be with his mother was greatly outweighed by the other factors and the evidence demonstrating that the paternal grandmother was satisfying his needs and providing stability. Furthermore, there was no disputed evidence that a reasonable factfinder could not have resolved in favor of finding that termination was in A.T.W.'s best interests, so as to prevent the trial court from forming a firm belief or conviction in that regard. Accordingly, we overrule the mother's challenge to the legal and factual sufficiency of the evidence on the child's best interests.

## Conclusion

We affirm the trial court's judgment.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

17