Opinion Issued July 23, 2009









Opinion Issued
July 23, 2009

 

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00795-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DASHONNON JOHNSON, Appellant

 

V.

 

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Appellee

 

 



On Appeal from the 314th District Court

Harris County, Texas

Trial Court Cause No. 2007-01252J

 








 



MEMORANDUM OPINION

           Dashonnon Johnson appeals
the trial court’s judgment terminating his parental rights to his minor
children, D. and J.  Johnson contends that the evidence is legally and
factually insufficient to support the trial court’s findings that he
constructively abandoned his children, that he failed to comply with a
court-ordered family service plan, and that termination is in the best
interests of these children.  Johnson further contends that the appointment of
the Texas Department of Family and Protective Services (TDFPS) as sole managing
conservator for the children should be reversed.  We conclude that (1) legally
and factually sufficient evidence supports the trial court’s finding that
Johnson constructively abandoned his children, and (2) termination of Johnson’s
parental rights is in the best interests of these children.  We therefore
affirm.

Background

In the year 2000, Johnson
became involved with April Johnson, the mother of his two sons, D., born in
2002, and J., born in 2004.  April also has two older daughters from previous
relationships.  For most of their relationship, Johnson and April lived in St. Louis, Missouri.  Before D. and J. were born, Children’s Protective Services in Missouri took April’s eldest daughter into protective custody for three years because April
had not ensured her attendance at school.  

In October 2006, Johnson
and April attempted to marry.  Though Johnson and April believed they were married,
testimony at trial indicated that their marriage is likely invalid because
April never divorced her first husband, who is the father of her eldest
daughter.  Johnson and April separated and reunited on several occasions.  In
December 2006, Johnson, April, and the four children moved to Houston.  Johnson
testified that they moved to Houston to be closer to April’s family, but
April’s oldest daughter reported to a caseworker that the move happened because
the family was homeless, and that they also had briefly moved to Houston in 2005, because they had been “kicked out” of their apartment.  April’s older
daughter testified that her mother often had left them home alone when they
were in Missouri, starting when she was about twelve, and this continued after
they moved to Houston.  She testified that Johnson would discover the children
home alone when he returned home from work.  She also reported to the
caseworker that she had observed crack in baggies in the home, and that Johnson
“smokes weed.”  In the caseworker’s report, admitted as an exhibit at trial,
April’s second daughter confirmed that Johnson smoked marijuana and also sold
it when they lived in Missouri.  Johnson admitted to the caseworker that he
used marijuana in the past “socially and infrequently,” and that he had smoked
marijuana “within the last couple of weeks.” At trial, he testified that he had
not used drugs since arriving in Texas, and that he was wrong about the date
that he gave the caseworker.  He noted that a recent drug test was negative.

In Houston, Johnson found
employment as a cook at a catering company.  Johnson testified that April found
work at Wal-Mart, and their schedules coordinated so that when one was at work,
the other could be home with the children.  At some point, however, while
Johnson was at work, April regularly disappeared, and left D. and J. at home
with her daughters.  April’s younger daughter reported that sometimes April and
Johnson would leave the children with food, and sometimes they would not.  When
they did not have food, April’s older daughter “would go out and steal food for
them.”  Johnson denied that the children lacked food, and stated that he did
the shopping with over $600 in food stamps.  April’s older daughter later
testified at trial that Johnson would bring the children food from work, but
they lacked clothing.  April never enrolled the older girls in school in Houston.

In January 2007, during
the Martin Luther King Day weekend, Johnson went to work. When he returned
home, he learned that April had left, and the children were left alone again in
the apartment.  After this episode, Johnson left all of the children with
Sheila Cotton, April’s aunt, and her husband.  Cotton enrolled the two older
children in school by the end of January.  Believing that the children were not
adequately cared for or supervised with April and Johnson, Cotton reported the
situation to TDFPS, which, after an initial investigation, formally placed the
children into protective custody with Cotton and her husband.  April and
Johnson signed both TDFPS and court-ordered family service plans.

After TDFPS removed the
children, Johnson and April lived for a time at the Center for Empowerment, a
housing assistance shelter.  At some point, Johnson obtained a unit with three
bedrooms, in an effort to obtain suitable housing in compliance with the
service plan.  TDFPS, however, examined the unit in February 2007, and
determined it was unsuitable for the children. The report notes that “[t]here
was no furniture in the home,” and “no beds for the children to sleep in.”
Johnson claims TDFPS never told him the reason that the apartment failed the
TDFPS inspection.  He briefly lost his job due to an injury, and then later
found employment at a Luby’s cafeteria.  Johnson ended his relationship with
April in September 2007—nine months after TDFPS placed his children with the
Cottons.  

In February 2008, just
over a year after TDFPS placed the children with the Cottons, Johnson moved
back to St. Louis.  In St. Louis, Johnson obtained employment as a cook at a
restaurant.  He lived in a converted basement bedroom at his mother’s home, and
he testified that if his children were returned to his custody, they would move
into their own two-bedroom apartment, one that he had put on hold, pending regaining
custody of his children.  Johnson testified, and Cotton confirmed, that he sent
one four-hundred dollar child support payment before the trial through the
TDFPS office.  He sent no other child support during the period from January
2007 through July 2008.  

At trial, the assigned
caseworker did not appear to testify, but the trial court admitted her initial
report into evidence.  TDFPS became involved with the family after a report of
negligent supervision of the four children, ages fourteen, eleven, five, and
two.  The elder children stated that the mother would leave for days at a time
and be unable to be contacted, and the parents left them alone for extended
periods of time without supervision or adequate food.  The report further
states that the mother and father “have a history of substance abuse.” The
children described witnessing drug use in the home.  The older girls alleged
that April had physically abused them and had forced the oldest daughter into
prostitution. 

Johnson acknowledged at
trial that family members warned him that April was prostituting her daughter. 
He testified that he confronted April and the daughter about it, but both
denied that it was happening, and he claimed he was helpless to remedy the
situation because April’s oldest daughter was not his child.  That daughter
testified that Johnson was a good father and would “break his back” to provide
anything that the children needed, but she confirmed that Johnson smoked
marijuana, including after the family arrived in Texas.  

Latoya Washington, the
caseworker’s supervisor, testified that TDFPS supplied Johnson and April with a
family service plan with which they were required to comply in order to regain
custody of the children.  The family service plan required Johnson to complete
parenting classes, complete a psychological assessment with the Children’s
Crisis Care Center, complete a drug and alcohol assessment, maintain a drug and
alcohol free lifestyle, complete drug and alcohol education classes and/or drug
counseling if recommended after completing a drug and alcohol assessment,
complete therapy sessions to address the issues identified in his Children’s
Crisis Care Center assessment, provide documentation to verify stable housing,
maintain employment, and actively participate in all court hearings, permanency
planning conferences, and scheduled family visits.  Both Washington and Deborah
Balfanz, the court-appointed child advocate, testified that the Cottons
currently meet the children’s needs in their home.

Balfanz testified that
she participated in arranging visits with Johnson in October and Christmas of
2008, before he moved to St. Louis.  Mrs. Cotton brought the children to the
agency for both visits, but Johnson did not show for either one.  She attempted
to call Johnson numerous times at the Center for Empowerment without success. 
She has visited the Cotton’s home, and believes that it “absolutely” is meeting
D. and J.’s needs.  She testified that it was in their best interests that
Johnson’s rights be terminated.

Cotton testified that
Johnson had not seen the children since TDFPS place them in her care.  She
noted that she and the children “sat there for hours” after Johnson requested
the Christmas visit and he failed to appear.  Cotton stated that Johnson knew
that April was not attending to the children when he was gone because he agreed
to leave the children with Cotton.  Although she stated, “I’m not saying that
Mr. Johnson was not a good father,” she reported that the children told her
about his marijuana use after they came to live with her.  Cotton testified
that she was willing to keep the children in her custody whether or not she was
able to adopt them, and that it was in their best interest to be with her and
her husband because “it’s a homely [sic] environment and . . . they’re not
having to wonder . . . where we are.” 

During the entire time
that the children were in TDFPS custody, Johnson recalls visiting them once, in
July 2007.  Johnson admitted that he missed two or three visits he scheduled
with his children.  Johnson testified that he wanted to visit his children more
frequently, but when he was injured, he lacked transportation or the money to
pay for public transportation.  Johnson testified that he tried to call his
boys almost every day on his lunch break, but he did not talk to them because
he got no answer or no one was at home.  He spoke to them one time.

In his defense against
termination, Johnson testified that he had taken steps toward becoming a better
parent to his sons, including ending his relationship with April.  Johnson
admitted that he had smoked marijuana in the past, but denied any recent drug
use.  Johnson testified that he completed a course in Alcoholics Anonymous.  He
also completed a parenting class on parenting teenagers. Johnson also testified
that he completed a drug test through the National Screening Center, used by Harris County, and the clerk’s record contains a drug test from the National Screening Center showing that Johnson tested negative for drugs in August 2007. 
Johnson also completed an assessment through the Children’s Crisis Care Center.

After both
sides rested, the trial court asked Cotton some additional questions regarding
the best interests of these children, which included this dialogue:

All right.  Ms. Cotton, could you come
up for a second?  There’s a real serious issue that has to be answered in my
mind about whether or not these young boys should continue to have a
relationship with their father.  Or because of what’s gone on in the past in
the way of a relationship with their father, would it be in their best interest
for their contacts to be just ended with that father. . . .

You know, and I’m not – I don’t – you
know I can’t answer that and I don’t have enough evidence in this mind at least
at this point without some help, more help than what I’ve had here today to
figure that one out.  So I want to know what you think about that.  You
understand what I’m asking?

 

Cotton replied, “the only
thing I can testify in the year and almost half that I’ve had them, at that
point from when they got into my custody, [there] was [a] very lack of his
getting to his children.”  She pointed out that she called CPS when, after he
left the children with her and they tried to enroll them in school, he called
the following day and told her that her care of the children sounded “like
kidnapping charges” to him.  She noted that the children have established a
very good routine, but that when Johnson makes promises to the children and
then fails to keep them, she must deal with children who “are crushed and hurt
and disappointed.”  She stated that she has “never talked bad” to either D. or
J. about their parents, because “as far as I’m concerned in their little minds
for a while they would wonder and they never asked about them, but I was just
there to comfort.”

Ultimately, the trial
court found that Johnson violated sections 161.001(1)(N) and (O) of the Texas
Family Code for constructive abandonment of his children and failure to comply
with the family service plan.  See Tex.
Fam. Code Ann. § 161.001(1)(N), (O) (Vernon 2008).  The trial court
further found that termination was in the children’s best interests, and
terminated Johnson’s parental rights to D. and J.

Discussion

The natural right that
exists between parents and their children is one of constitutional dimension.  See
In re J.F.C., 96 S.W.3d 256, 273 (Tex. 2002) (examining constitutional
implications of terminating parental rights).  A parent’s right to “the
companionship, care, custody and management of his or her children” is a
constitutional interest “far more precious than any property right.”  Santosky
v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982) (quoting Stanley
v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1972)).  Thus, in a
case terminating parental rights, we carefully scrutinize the proceedings and
strictly construe the law in favor of the parent.  Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  

In proceedings brought
under section 161.001 of the Family Code, TDFPS must establish one or more of
the acts or omissions enumerated under the first subdivision of the statute and
must also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (Vernon
2008); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005); In re L.M., 104
S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Standard of Review

          Due process requires that
clear and convincing evidence support a finding of termination.  Santosky,
455 U.S. at 747–48, 102 S. Ct. at 1391–92; In re B.L.D., 113 S.W.3d 340,
353–54 (Tex. 2003).  To be legally or factually sufficient under the clear and
convincing standard, the evidence must be such that a fact-finder reasonably
could form a firm belief or conviction about the truth of the matter on which
the State bears the burden of proof.  In re J.L., 163 S.W.3d at 84; Robinson
v. Tex. Dep’t of Protective & Regulatory Servs., 89 S.W.3d 679, 688 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

In a legal sufficiency
challenge, we review the evidence in a light most favorable to the trial court’s
finding, and assume the fact-finder resolved disputed facts in favor of its
finding if a reasonable fact-finder could do so.  In re J.L., 163 S.W.3d
at 85.   We disregard any evidence that a reasonable fact-finder could have
disbelieved, but we do not disregard undisputed facts.  Id.  In
reviewing a challenge to the factual sufficiency of the evidence, we must give
due consideration to the evidence that the fact-finder reasonably could have
found to be clear and convincing, considering all the evidence in the record,
including evidence in support of and contrary to the trial court’s findings.  In
re J.F.C., 96 S.W.3d at 266.   In reviewing all the evidence, we also keep
in mind that the State has the burden of proof in termination proceedings.  See
id. at 264.

Basis for Termination

The trial court found
that termination of Johnson’s parental rights was proper under sections
161.001(N) and (O) of the Texas Family Code.  Under sections 161.001(1)(N) and
(O), a court may order termination of a parent’s rights if the court finds by
clear and convincing evidence that the parent has 

(N) constructively abandoned the child
who has been in the permanent or temporary managing conservatorship of the
Department of Family and Protective Services or an authorized agency for not
less than six months, and 

(i)    the department or authorized
agency has made reasonable efforts to return the child to the parent; 

(ii)   the parent has not regularly
visited or maintained significant contact with the child; and

(iii)  the parent has demonstrated an
inability to provide the child with a safe environment.  

(O)  failed to comply with the
provisions of a court order that specifically established the actions necessary
for the parent to obtain the return of the child who has been in the permanent
or temporary managing conservatorship of the Department of Family and
Protective Services for not less than nine months as a result of the child’s
removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

 

Tex. Fam.
Code Ann.
§ 161.001(1)(N), (O) (Vernon 2008).  A court must base a termination of
parental rights upon a finding that a parent engaged in conduct described in
one of the alleged grounds, plus a finding that termination is in the best
interest of the children.  See id. § 161.001(1)–(2); Latham v. Dep’t
of Family & Protective Servs., 177 S.W.3d 341, 349 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Johnson contends that the
evidence is legally and factually insufficient to support a finding that he
constructively abandoned D. and J. and that he failed to comply with the family
service plan.  Only one of these
findings is necessary to support an order of termination.  See Robinson,
89 S.W.3d at 687.  As only one of these findings is necessary, we discuss the
evidence supporting the trial court’s finding that Johnson constructively
abandoned his children.

Conservatorship

It is undisputed that D.
and J. have been in TDFPS care since January 2007, and thus the children were
in state care for a period longer than six months at the time of trial, in July
2008.  In addition, Johnson acknowledged that he signed a family service plan
that included scheduled visitation with the children and agreed to basic
requirements for reunification with his children.  The plan provided
opportunities for Johnson to partake in a number of services to restore his
full parental rights, including counseling services, drug and alcohol abuse
programs, and parenting classes.  Further, TDFPS placed the children with one
of their relatives, whom Johnson earlier had asked for help with the children. 
TDFPS’s family service plan requirements, its offer of counseling and other
educational services, its assistance with scheduling visits, and its placement
of the children with a known relative supports the trial court’s implied
finding that TDFPS made reasonable efforts to return the child to Johnson.
Compliance with TDFPS’s requirements established minimal safeguards that the
children would be adequately fed, housed, and cared for in Cotton’s custody.
Johnson had familiarity with the children’s location and their caregivers, and
had sought the help of these caregivers himself.  

Lack of Regular
Visitation and Contact

Despite the fact that
Johnson knew where his children resided, TDFPS adduced evidence that Johnson
had not regularly visited or maintained any significant contact with his
children while they were in the department’s care.  Johnson had not seen his
children for more than a year before the trial.  He had not kept several pre-arranged
appointments to visit with his children.  He did not regularly pay child
support.  He moved out of state away from the children.  Although he claimed to
call the children “daily,” he stated that often no one answered the phone, and
he had only spoken to them once.  Cotton testified that the children did not
ask about their father because they had had no significant contact with him in
a year and a half.  

Inability to Provide
the Children with a Safe Environment

The trial court heard
conflicting evidence as to whether Johnson demonstrated an inability to provide
the children with a safe environment.  The plan required Johnson to maintain
housing suitable for his children.  TDFPS assessed Johnson’s apartment at the
Center for Empowerment and found it unsuitable, noting that it lacked any
furniture or beds.  Johnson points out that no one assessed the apartment that
he had on hold in St. Louis, but April’s older daughter made a point of telling
the trial court that Johnson’s mom, with whom he resided at the time of the
trial, “did drugs” with her mother the last time that they all lived with her. 
Johnson acknowledged that he had difficulty providing money for child support. 
He lacked a support system in St. Louis aside from his mother, who has a demonstrable
lack of parenting ability, as Johnson himself was raised in foster care. 
Although Johnson completed some of the requirements of the family services plan
and found employment, he did not submit to the required routine drug testing,
and he currently resided with his mother in a basement room, housing that he
acknowledged was unsuitable.  Given Johnson’s history of residing with April, a
known child abuser and drug user, and his then-current living arrangement with
his mother (also a serious drug user), the trial court reasonably could have
concluded that Johnson could not provide D. and J. with a safe and secure
environment if they returned to his care.

We hold that the evidence
presented at trial, when viewed in a light most favorable to the trial court’s
finding, is legally and factually sufficient to support the trial court’s
finding that Johnson constructively abandoned his children as the Legislature
has defined it.  See Tex. Fam.
Code Ann. § 161.001(1)(N) (Vernon 2008); In re P.R., 994
S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, no pet.) (trial court’s finding of
constructive abandonment supported by sufficient evidence where mother visited
the children only sporadically, had an unstable employment history, and no
permanent residency).

Best Interests of the Children

In determining the best
interests of a child, courts examine the following: (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individual seeking custody; (5) the programs
available to assist the individual; (6) the plans for the child by the parent
and the individual seeking custody; (7) the stability of the home; (8) the
parent’s acts or omissions that indicate that the existing parent-child
relationship is not a proper one; and (9) any excuse for the parent’s acts or
omissions.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  The Holley
factors are not exhaustive; some listed may not apply, while others not
included on the list may also be appropriate.  In re C.H., 89 S.W.3d 17,
27 (Tex. 2002).  Using these factors, we examine whether the evidence is
legally and factually sufficient to support the trial court’s finding that termination
is in D. and J.’s best interests.

The trial court record
reflects limited evidence of the children’s desires, given that they were not
yet school age.  Washington, Balfanz, and Cotton each testified that the
children’s needs were being met by their placement with the Cottons and that
termination was in D. and J.’s best interests.  Cotton was there to comfort the
children when their mother and father failed to show up to appointments to
visit with them.

While the record
indicates that April abused and neglected her daughters, there is no indication
that Johnson abused any child or that D. and J. were in physical danger when
they were left in the care of their older sisters.  Johnson’s failure to
protect the children from April’s conduct, however, calls into question his
parental abilities and whether he can meet their physical and emotional needs. 
The children were left alone on a regular basis for extended periods of time,
sometimes, according to the caseworker’s report, without food.  In addition,
Johnson smoked marijuana in the home.

April’s eldest daughter
testified that Johnson was a good father and would “break his back” to provide
food for them.   Johnson took a parenting class at the Center for Empowerment
on parenting teenagers, which may not have been applicable at the time to his
young children, but showed an effort in improving his parenting in the long
run.  Johnson also testified that he was involved in a single fathers’ support
group in St. Louis.  Johnson indicated that if the children were returned to
his custody, he planned to move them to St. Louis, where he had two different
apartment options pending their return and where he had a family support system
to help him raise D. and J.  However, he currently lived with his mother, Mary,
and April’s eldest daughter testified that while they lived in St. Louis, they lived with Mary, and “when we were staying with Mary, Mr. Johnson’s mom,
[April and Mary] would do drugs together and I would actually see this for
myself.”

The most significant
factor weighing against Johnson is his lack of any significant contact or care
for his children.  Johnson’s failure to visit his children while they were in
TDFPS custody favors the trial court’s ruling.  Johnson offered an excuse that
he was injured for part of the time, which prevented him from working and
making money to afford transportation to visit the children and pay child
support.

Overall, the record
contains evidence that supports the trial court’s conclusion that termination
of Johnson’s parental rights is in the best interests of the children: 
primarily, his failure to see or spend any time with his own children, or to
have any contact with them during the year they lived with the Cottons; and
secondarily, his inability to provide adequate supervision of the children on
an ongoing basis when they had been in his care, to acknowledge April’s
prostitution of her daughter while living with him, to report this abuse, to
report that the older children were not enrolled in school, and to use illegal
drugs with children present in the home.  In contrast, the Cottons provided the
children with a good home, stability, and “comfort.”  We conclude that legally
and factually sufficient evidence supports the trial court’s finding that
termination was in the best interests of these children.  The trial court was
free to disbelieve Johnson’s testimony.  Even crediting testimony that Johnson
had taken measures to improve as a father, however, the trial court nonetheless
reasonably could have formed a firm conviction that the best interests of the
children do not lie with a father who has not seen them in a more than a year
and was helpless to stop abuse of their siblings and drug use in the home when
they were in his care.

Conclusion

We hold that the evidence
supports the trial court’s findings that Johnson constructively abandoned his
children and that termination is in D. and J.’s best interests.  We therefore
affirm the judgment of the trial court.

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Bland,
Sharp, and Taft.[1]









[1]
Justice Tim Taft, who retired from the First
Court of Appeals on June 1, 2009, continues to sit by assignment for the
disposition of this case, which was submitted on April 21, 2009.