NO. 12-09-00429-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN THE INTEREST OF                               §                      APPEAL
FROM THE THIRD

 

C.C. AND S.C.,                                              §                      JUDICIAL
DISTRICT COURT 

 

CHILDREN                                                   §                      ANDERSON
COUNTY, TEXAS







            MEMORANDUM
OPINION

C.D.C.
appeals the termination of her parental rights. In seven issues, C.D.C.
challenges the order of termination.  We affirm.

 

Background

C.D.C.
is the mother of two children, C.C., born January 29, 2002, and S.C., born
January 13, 2004.  C.R.C.[1] is the father of both
children.  On May 12, 2008, the Department of Family and Protective Services
(the Department) filed an original petition for protection of a child, for
conservatorship, and for termination of the parent-child relationship between
both parents and both children.  On June 19, 2008, the trial court ordered that
the Department be appointed temporary managing conservators of the children.  A
trial began on November 9, 2009. At the conclusion of the trial, the trial
court found, by clear and convincing evidence, that C.D.C. had engaged in one
or more of the acts or omissions necessary to support termination of her
parental rights, and that termination of the parent-child relationship between
C.C., S.C., and C.D.C. was in the children=s
best interest.  Based on these findings, the trial court ordered that the
parent-child relationship between C.C., S.C., and C.D.C. be terminated.  On
January 11, 2010, the trial court filed findings of facts and conclusions of
law. This appeal followed.

 

Termination of Parental Rights

Involuntary
termination of parental rights embodies fundamental constitutional rights. Vela
v. Marywood, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), pet. denied
per curiam, 53 S.W.3d 684 (Tex. 2001);  In re J.J., 911
S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied).  A termination decree
is Acomplete, final,
irrevocable [and] divests for all time the parent and child of all legal
rights, privileges, duties, and powers with respect to each other except for
the child=s right to
inherit.@  Wiley
v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976); In re Shaw,
966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.)  Because a termination action Apermanently
sunders@ the bonds
between a parent and child, the proceedings must be strictly scrutinized.  Wiley,
543 S.W.2d at 352; In re Shaw, 966 S.W.2d at 179.  However,
parental rights are not absolute, and it is vital that the emotional and
physical interests of the child not be sacrificed at the expense of preserving
that right.  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

Section
161.001 of the family code permits a court to order termination of parental
rights if two elements are established.  Tex.
Fam. Code Ann. § 161.001 (Vernon Supp. 2010); In re J.M.T.,
39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.).  First, the parent must have
engaged in any one of the acts or omissions itemized in the first subsection of
the statute.  Tex. Fam. Code Ann. § 161.001(1)
(Vernon Supp. 2010); Green v. Texas Dep=t of Protective &
Regulatory Servs., 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no
pet.); In re J.M.T., 39 S.W.3d at 237.  Second, termination must
be in the best interest of the child.  Tex.
Fam. Code Ann. § 161.001(2) (Vernon Supp. 2010); In re J.M.T.,
39 S.W.3d at 237.  Additionally, both elements must be established by clear and
convincing evidence, and proof of one element does not alleviate the petitioner=s burden of proving the
other.  Tex. Fam. Code Ann. § 161.001;
Wiley, 543 S.W.2d at 351; In re J.M.T., 39 S.W.3d
at 237. 

Due
process requires a petitioner to justify termination by clear and convincing
evidence because termination is such a drastic remedy.  In re J.M.T.,
39 S.W.3d at 237.  The clear and convincing standard for termination of
parental rights is both constitutionally and statutorily mandated.  Tex. Fam. Code Ann. § 161.001; In
re J.J., 911 S.W.2d at 439.  Clear and convincing evidence means Athe measure or degree of
proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established.@  Tex. Fam. Code Ann. § 101.007 (Vernon 2008).  There is a
strong presumption that the best interest of the child is served by preserving
the parent-child relationship.  Wiley, 543 S.W.2d at 352; In
re J.M.T., 39 S.W.3d at 240.  Thus, the burden of proof is upon the
person seeking to deprive the parent of their parental rights.  In re
J.M.T., 39 S.W.3d at 240.

 

Standard of Review

            When confronted by both a
legal and a factual sufficiency challenge, an appellate court must first review
the legal sufficiency of the evidence.  Glover v. Tex. Gen. Indem. Co.,
619 S.W.2d 400, 401 (Tex. 1981); In re M.D.S., 1 S.W.3d 190, 197
(Tex. App.–Amarillo 1999, no pet.).  Because termination findings must be based
on clear and convincing evidence, the standard of review is not the same on
appeal as a finding based upon a preponderance of the evidence.  In re
J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).  Therefore, in conducting a
legal sufficiency review, we must look at all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its findings were true.  Id.
at 266.  We must assume that the fact finder settled disputed facts in favor of
its finding if a reasonable fact finder could do so and disregard all evidence
that a reasonable fact finder could have disbelieved or found incredible.  Id. 
This does not mean that we are required to ignore all evidence not supporting
the finding because that might bias a clear and convincing analysis.  Id.

The
appropriate standard for reviewing a factual sufficiency challenge to the
termination findings is whether the evidence is such that a fact finder could
reasonably form a firm belief or conviction about the truth of the petitioner=s allegations.  In re
C.H., 89 S.W.3d at 25.  In determining whether the fact finder has met
this standard, an appellate court considers all the evidence in the record,
both that in support of and contrary to the trial court=s findings.  Id. at 27-29.  
Further, an appellate court should consider whether disputed evidence is such
that a reasonable fact finder could not have reconciled that disputed evidence
in favor of its finding.  In re J.F.C., 96 S.W.3d at 266.

This
standard retains the deference an appellate court must have for the fact finder=s role.  In re C.H.,
89 S.W.3d at 26.  Additionally, the trier of fact is the exclusive judge of the
credibility of the witnesses and the weight to be given their testimony.  Nordstrom
v. Nordstrom, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997,
pet. denied).  Thus, our review must not be so rigorous that only fact findings
established beyond a reasonable doubt could withstand review.  In re C.H.,
89 S.W.3d at 26.

 

Termination Under Section 161.001(1)(E)

In
her third and fourth issues, C.D.C. argues that the evidence is legally and
factually insufficient to support a finding that she engaged in conduct or
knowingly placed C.C. and S.C. with persons who engaged in conduct that
endangered the children’s physical or emotional well being. 

Applicable
Law

            Section
161.001(1)(E) of the Texas Family Code states that the court may order
termination of the parent-child relationship if the court finds by clear and
convincing evidence that the parent has engaged in conduct or knowingly placed
the child with persons who engaged in conduct that endangers the physical or
emotional well being of the child.  Tex.
Fam. Code Ann. §161.001(1)(E) (Vernon Supp. 2010).  The specific danger
to the child=s well
being need not be established as an independent proposition, but may instead be
inferred from parental misconduct. Tex. Dep’t of Human Svcs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987); In re J.J., 911 S.W.2d at 440.  Further,
scienter is not required for an appellant=s
own acts under section 161.001(1)(E), although it is required when a parent
places his child with others who engage in endangering acts.  In re U.P.,
105 S.W.3d 222, 236 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).  Finally,
the need for permanence is a paramount consideration for the child=s present and future
physical and emotional needs. In re N.K., 99 S.W.3d 295, 301 n.9
(Tex. App.–Texarkana 2003, no pet.); In re M.D.S., 1 S.W.3d at
200. 

AEndanger@ means to expose to loss or
injury or to jeopardize.  Boyd, 727 S.W.2d at 533; In re
D.M., 58 S.W.3d 801, 811 (Tex. App.–Fort Worth 2001, no pet.).  It is
not necessary that the conduct be directed at the child or that the child
actually suffers injury; rather, it is sufficient that the child=s well being be jeopardized
or exposed to loss or injury.  Boyd, 727 S.W.2d at 533; In
re J.J., 911 S.W.2d at 440.  Subsection (E) requires us to look at the
parent=s conduct
alone, including actions, omissions, or the parent=s failure to act.  In re D.J.,
100 S.W.3d 658, 662 (Tex. App.–Dallas 2003, pet. denied); In re D.M.,
58 S.W.3d at 811.  It is inconsequential that the parental conduct occurred
before the child=s
birth.  In re U.P., 105 S.W.3d at 229; In re D.M.,
58 S.W.3d at 812.  Instead, courts look to what the parent did both before and
after the child=s
birth to determine whether termination is necessary. In re D.M.,
58 S.W.3d at 812.  Further, termination under subsection (E) must be based on
more than a single act or omission.  In re D.M., 58 S.W.3d at
812; In re D.T., 34 S.W.3d 625, 634 (Tex. App.–Fort Worth 2000,
pet. denied).  A voluntary, deliberate, and conscious Acourse of conduct@ by the parent that endangers the child=s physical and emotional
well being is required.  In re D.M., 58 S.W.3d at 812; In
re D.T., 34 S.W.3d at 634. 

As
a general rule, conduct that subjects a child to a life of uncertainty and
instability endangers the physical and emotional well being of a child.  In
re M.R.J.M., 280 S.W.3d 494, 503 (Tex. App.–Fort Worth 2009, no pet.); In
re R.W., 129 S.W.3d 732, 739 (Tex. App.–Fort Worth 2004, pet. denied).  A
parent’s use of narcotics and its effect on her ability to parent may qualify
as an endangering course of conduct.  In re J.O.A., 283 S.W.3d
336, 345 (Tex. 2009); see also In re R.W., 129 S.W.3d at
739.  Further, a parent’s illegal drug use can support termination for
endangerment because it exposes the child to the possibility that the parent
may be impaired or imprisoned.  Melton v. Tex. Dep’t of Family and
Protective Svcs., No. 03-08-00168-CV, 2010 WL 668917, at *5 (Tex.
App.–Austin Feb. 25, 2010, no pet.) (mem. op.). 

A
parent’s imprisonment will not, standing alone, constitute endangerment. Latham
v. Dep’t of Family and Protective Svcs., 177 S.W.3d 341, 348 (Tex. App.–Houston
[1st Dist.] 2005, no pet.).  But if the evidence, including imprisonment, shows
a course of conduct that endangers the physical or emotional well being of the
child, these facts support a finding under section 161.001(1)(E).  Id.;
see also Melton, 2010 WL 668917, at *5.  Further, conduct that
routinely subjects a child to the probability that she will be left alone
because her parent is once again jailed, whether because of the continued
violation of probationary conditions or because of a new offense growing out of
a continued use of illegal drugs, endangers both the physical and emotional
well being of a child.  See In re S.D., 980 S.W.2d 758, 763 (Tex.
App.–San Antonio 1998, pet. denied).

Analysis

At
trial, Lesley Bitz, a resolution specialist with the Department, testified that
C.C. and S.C. had lived with C.D.C.’s parents “pretty much their whole” lives.  Bitz
stated that, during an investigation in November 2007, the Department, C.D.C.,
and C.D.C.’s parents agreed that C.D.C. would complete certain tasks before she
was allowed back into her parents’ house, where the children resided.  Those
tasks included random drug testing and completion of some drug counseling. Bitz
testified that in February 2008, the Department was informed that C.D.C. was
living in her parents’ home with the children and that the children were not
being supervised.  According to Bitz, C.D.C. was found to be living in her
parents’ home without completing any of the tasks agreed upon, and the children
were removed and placed with an aunt.  Betty Witherspoon, the CASA
representative and guardian ad litem for the children, testified that C.D.C.’s
plans were not predictable or stable. 

C.D.C.
testified that she and C.R.C. were married in 2001 and separated four years
later, but were never divorced.  C.D.C. stated that, after the couple separated
and while she lived in Anderson County, she and her children lived with her
parents.  She also testified that she and her children lived with one of her
boyfriends for approximately six months.  She admitted leaving her children
with her parents because she believed they were safer with her parents than
with anyone else.  When C.D.C. was not living with her parents or not in jail,
she lived with her boyfriends.  She admitted living in at least three different
addresses in the Longview, Texas area within the past two years, along with
four or five motels off and on “for years,” weeks, or months at a time.  She
also admitted living on the street.  However, C.D.C. stated that she was
presently seeking employment.

C.D.C.
testified that she began using crack cocaine about a year after she and C.R.C.
separated.  She admitted using crack cocaine every day, but stated that she had
not used crack cocaine since her arrest for prostitution in June 2009.  C.D.C.
testified that she had been “in and out” of her children’s lives, but believed
her actions were better for the children while she was dealing with her drug
problem.  She testified that her children were never around drugs. According to
C.D.C., she no longer had a drug problem and had been “clean” for approximately
eight or nine months.  But she admitted being “around” drugs and people smoking
cocaine before being arrested that month.  For that reason, she stated, if she
were given a hair follicle drug test, she would probably test positive.  She
testified that, if her children were returned to her care, she would not go
back to the Longview area.  However, C.D.C. admitted that the Longview area is
her “safe haven” that she runs to whenever something happens with her children.


At
the time of trial, C.D.C. was in the Anderson County jail on a warrant for
theft by check because she never completed her probation.  According to
exhibits admitted at trial, C.D.C. had a lengthy criminal history.  Between 2006
and 2009, she was convicted of theft by check; possession of drug paraphernalia
(three separate offenses); failure to identify, giving false/fictitious
information (twice); failure to identify, fugitive, intent to give false
information (twice); evading arrest, detention; resisting arrest, search, or
transport; and prostitution.  According to records from Gregg County, C.D.C.
served 290 days in jail from October 2005 to August 2009. She admitted that all
of her arrests, convictions, and confinements occurred after the birth of her
children.  Further, she stated that her arrest for prostitution occurred after
she appeared at a hearing in this matter on May 22, 2009. 

Viewing
the evidence in the light most favorable to the finding, a reasonable fact
finder could have concluded that C.D.C. engaged in substantial and long term
narcotics abuse, that she was around persons who used drugs even after she knew
her parental rights were in jeopardy, and that she would probably test positive
if she were given a hair follicle drug test at the time of trial.  Although
C.D.C. testified that her children were never around drugs, she admitted that
she had used crack cocaine every day since she and her husband separated until
her arrest in June 2009, and that she and her children lived with one of her
boyfriends for approximately six months.  From this evidence, the trial court
could have concluded that C.D.C. abused narcotics around her children.  The
trial court could have determined that C.D.C.’s unstable history of living off
and on with her parents and boyfriends at numerous addresses, motels, and, at
times, the street subjected her children to a life of uncertainty and
instability.  See  In re M.R.J.M., 280 S.W.3d at 503.  Moreover,
the trial court could have found that C.D.C.’s continuous incarcerations were
voluntary, deliberate, and conscious.  See In re K.M.M., 993
S.W.2d 225, 228 (Tex. App.–Eastland 1999, no pet.).  Finally, the trial court
could have concluded that C.D.C.’s long history of criminal activity added to
the instability of the children’s lives.  See In re S.D., 980
S.W.2d at 763; Melton, 2010 WL 668917, at *7. 

Thus,
the trial court could have determined that C.D.C. had engaged in a voluntary,
deliberate, and conscious Acourse
of conduct@ that
demonstrated a pattern of substance abuse, instability, and imprisonment.  See
In re D.M., 58 S.W.3d at 812; In re D.T., 34 S.W.3d at
634. Therefore, we conclude that the evidence, viewed in the light most
favorable to the finding, is sufficiently clear and convincing that a
reasonable trier of fact could have formed a firm belief or conviction that
C.D.C. engaged in conduct or knowingly placed C.C. and S.C. with persons who
engaged in conduct that endangered their physical or emotional well being.

Although
there is conflicting evidence that C.D.C. was seeking employment, that she
would not go back to the Longview area if the children were returned to her
care, and that she no longer had a drug problem, the trial court could have
resolved this conflict in favor of its finding. Although there is some disputed
evidence, this evidence is not so significant that a reasonable trier of fact
could not have reconciled this evidence in favor of its finding and formed a
firm belief or conviction that C.D.C. engaged in conduct or knowingly placed
C.C. and S.C. with persons who engaged in conduct that endangered their
physical or emotional well being. Accordingly, C.D.C.’s third and fourth issues
are overruled.[2] 

 

Disposition

The
judgment of the trial court is affirmed.

 

 

                                                                                                Sam Griffith

                                                                                                       
 Justice

 

 

 

Opinion delivered January 19, 2011.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

(PUBLISH)









[1] On December 7, 2009, the trial court found, by clear
and convincing evidence, that C.R.C. had engaged in one or more of the acts or
omissions necessary to support termination of his parental rights, and that
termination of the parent-child relationship between C.C., S.C., and C.R.C. was
in the children=s best interest.  Based on these findings, the trial
court ordered that the parent-child relationship between C.C., S.C., and C.R.C.
be terminated. C.R.C. is not a party to this appeal. 





[2] Under section 161.001, the State was required to
prove only one ground of termination under subsection (1). Because we have concluded
that the evidence is legally and factually sufficient to support termination of
C.D.C.’s parental rights under subsection (1)(E), we need not determine the
sufficiency of the evidence to support the trial court=s findings under subsections (1)(D) and (1)(N).  Thus,
we do not address C.D.C.’s first, second, fifth, and sixth issues.  Further,
because we did not reverse the trial court’s order of termination, we need not
address C.D.C.’s seventh issue to determine whether the trial court properly
named the Department as permanent managing conservator in the absence of
termination of C.D.C.’s parental rights.