# NO. 12-09-00429-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE THIRD* |
| *C.C. AND S.C.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.D.C. appeals the termination of her parental rights. In seven issues, C.D.C. challenges the order of termination. We affirm.

## BACKGROUND

C.D.C. is the mother of two children, C.C., born January 29, 2002, and S.C., born January 13, 2004. C.R.C.[1] is the father of both children. On May 12, 2008, the Department of Family and Protective Services (the Department) filed an original petition for protection of a child, for conservatorship, and for termination of the parent-child relationship between both parents and both children. On June 19, 2008, the trial court ordered that the Department be appointed temporary managing conservators of the children. A trial began on November 9, 2009. At the conclusion of the trial, the trial court found, by clear and convincing evidence, that C.D.C. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights, and that termination of the parent-child relationship between C.C., S.C., and C.D.C. was in the children's best interest. Based on these findings, the trial court ordered that

---

[1] On December 7, 2009, the trial court found, by clear and convincing evidence, that C.R.C. had engaged in one or more of the acts or omissions necessary to support termination of his parental rights, and that termination of the parent-child relationship between C.C., S.C., and C.R.C. was in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between C.C., S.C., and C.R.C. be terminated. C.R.C. is not a party to this appeal.

the parent-child relationship between C.C., S.C., and C.D.C. be terminated. On January 11, 2010, the trial court filed findings of facts and conclusions of law. This appeal followed.

<h2 style="text-align:center">TERMINATION OF PARENTAL RIGHTS</h2>

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). A termination decree is "complete, final, irrevocable [and] divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.) Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley*, 543 S.W.2d at 352; *In re Shaw*, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that the emotional and physical interests of the child not be sacrificed at the expense of preserving that right. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2010); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (Vernon Supp. 2010); *Green v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (Vernon Supp. 2010); *In re J.M.T.*, 39 S.W.3d at 237. Additionally, both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

Due process requires a petitioner to justify termination by clear and convincing evidence because termination is such a drastic remedy. *In re J.M.T.*, 39 S.W.3d at 237. The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the

trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008). There is a strong presumption that the best interest of the child is served by preserving the parent-child relationship. *Wiley*, 543 S.W.2d at 352; *In re J.M.T.*, 39 S.W.3d at 240. Thus, the burden of proof is upon the person seeking to deprive the parent of their parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted by both a legal and a factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). Because termination findings must be based on clear and convincing evidence, the standard of review is not the same on appeal as a finding based upon a preponderance of the evidence. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Therefore, in conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *Id*. at 266. We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d at 25. In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266.

This standard retains the deference an appellate court must have for the fact finder's role. *In re C.H.*, 89 S.W.3d at 26. Additionally, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*,

3

965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that only fact findings established beyond a reasonable doubt could withstand review. *In re C.H.*, 89 S.W.3d at 26.

### TERMINATION UNDER SECTION 161.001(1)(E)

In her third and fourth issues, C.D.C. argues that the evidence is legally and factually insufficient to support a finding that she engaged in conduct or knowingly placed C.C. and S.C. with persons who engaged in conduct that endangered the children's physical or emotional well being.

## Applicable Law

Section 161.001(1)(E) of the Texas Family Code states that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. §161.001(1)(E) (Vernon Supp. 2010). The specific danger to the child's well being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.*, 911 S.W.2d at 440. Further, scienter is not required for an appellant's own acts under section 161.001(1)(E), although it is required when a parent places his child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.–Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

"Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.–Fort Worth 2001, no pet.). It is not necessary that the conduct be directed at the child or that the child actually suffers injury; rather, it is sufficient that the child's well being be jeopardized or exposed to loss or injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.–Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d at 811. It is inconsequential that the parental conduct occurred before the child's birth. *In re U.P.*, 105 S.W.3d at 229; *In re D.M.*, 58

S.W.3d at 812. Instead, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. *In re D.M.*, 58 S.W.3d at 812. Further, termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.–Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.–Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.–Fort Worth 2004, pet. denied). A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d at 739. Further, a parent's illegal drug use can support termination for endangerment because it exposes the child to the possibility that the parent may be impaired or imprisoned. *Melton v. Tex. Dep't of Family and Protective Svcs.*, No. 03-08-00168-CV, 2010 WL 668917, at *5 (Tex. App.–Austin Feb. 25, 2010, no pet.) (mem. op.).

A parent's imprisonment will not, standing alone, constitute endangerment. *Latham v. Dep't of Family and Protective Svcs.*, 177 S.W.3d 341, 348 (Tex. App.–Houston [1st Dist.] 2005, no pet.). But if the evidence, including imprisonment, shows a course of conduct that endangers the physical or emotional well being of the child, these facts support a finding under section 161.001(1)(E). *Id.*; *see also Melton*, 2010 WL 668917, at *5. Further, conduct that routinely subjects a child to the probability that she will be left alone because her parent is once again jailed, whether because of the continued violation of probationary conditions or because of a new offense growing out of a continued use of illegal drugs, endangers both the physical and emotional well being of a child. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.–San Antonio 1998, pet. denied).

## Analysis

At trial, Lesley Bitz, a resolution specialist with the Department, testified that C.C. and S.C. had lived with C.D.C.'s parents "pretty much their whole" lives. Bitz stated that, during an investigation in November 2007, the Department, C.D.C., and C.D.C.'s parents agreed that C.D.C. would complete certain tasks before she was allowed back into her parents' house, where

5

the children resided. Those tasks included random drug testing and completion of some drug counseling. Bitz testified that in February 2008, the Department was informed that C.D.C. was living in her parents' home with the children and that the children were not being supervised. According to Bitz, C.D.C. was found to be living in her parents' home without completing any of the tasks agreed upon, and the children were removed and placed with an aunt. Betty Witherspoon, the CASA representative and guardian ad litem for the children, testified that C.D.C.'s plans were not predictable or stable.

C.D.C. testified that she and C.R.C. were married in 2001 and separated four years later, but were never divorced. C.D.C. stated that, after the couple separated and while she lived in Anderson County, she and her children lived with her parents. She also testified that she and her children lived with one of her boyfriends for approximately six months. She admitted leaving her children with her parents because she believed they were safer with her parents than with anyone else. When C.D.C. was not living with her parents or not in jail, she lived with her boyfriends. She admitted living in at least three different addresses in the Longview, Texas area within the past two years, along with four or five motels off and on "for years," weeks, or months at a time. She also admitted living on the street. However, C.D.C. stated that she was presently seeking employment.

C.D.C. testified that she began using crack cocaine about a year after she and C.R.C. separated. She admitted using crack cocaine every day, but stated that she had not used crack cocaine since her arrest for prostitution in June 2009. C.D.C. testified that she had been "in and out" of her children's lives, but believed her actions were better for the children while she was dealing with her drug problem. She testified that her children were never around drugs. According to C.D.C., she no longer had a drug problem and had been "clean" for approximately eight or nine months. But she admitted being "around" drugs and people smoking cocaine before being arrested that month. For that reason, she stated, if she were given a hair follicle drug test, she would probably test positive. She testified that, if her children were returned to her care, she would not go back to the Longview area. However, C.D.C. admitted that the Longview area is her "safe haven" that she runs to whenever something happens with her children.

At the time of trial, C.D.C. was in the Anderson County jail on a warrant for theft by check because she never completed her probation. According to exhibits admitted at trial, C.D.C. had a lengthy criminal history. Between 2006 and 2009, she was convicted of theft by

6

check; possession of drug paraphernalia (three separate offenses); failure to identify, giving false/fictitious information (twice); failure to identify, fugitive, intent to give false information (twice); evading arrest, detention; resisting arrest, search, or transport; and prostitution. According to records from Gregg County, C.D.C. served 290 days in jail from October 2005 to August 2009. She admitted that all of her arrests, convictions, and confinements occurred after the birth of her children. Further, she stated that her arrest for prostitution occurred after she appeared at a hearing in this matter on May 22, 2009.

Viewing the evidence in the light most favorable to the finding, a reasonable fact finder could have concluded that C.D.C. engaged in substantial and long term narcotics abuse, that she was around persons who used drugs even after she knew her parental rights were in jeopardy, and that she would probably test positive if she were given a hair follicle drug test at the time of trial. Although C.D.C. testified that her children were never around drugs, she admitted that she had used crack cocaine every day since she and her husband separated until her arrest in June 2009, and that she and her children lived with one of her boyfriends for approximately six months. From this evidence, the trial court could have concluded that C.D.C. abused narcotics around her children. The trial court could have determined that C.D.C.'s unstable history of living off and on with her parents and boyfriends at numerous addresses, motels, and, at times, the street subjected her children to a life of uncertainty and instability. *See In re M.R.J.M.*, 280 S.W.3d at 503. Moreover, the trial court could have found that C.D.C.'s continuous incarcerations were voluntary, deliberate, and conscious. *See In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.–Eastland 1999, no pet.). Finally, the trial court could have concluded that C.D.C.'s long history of criminal activity added to the instability of the children's lives. *See In re S.D.*, 980 S.W.2d at 763; *Melton*, 2010 WL 668917, at \*7.

Thus, the trial court could have determined that C.D.C. had engaged in a voluntary, deliberate, and conscious "course of conduct" that demonstrated a pattern of substance abuse, instability, and imprisonment. *See In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634. Therefore, we conclude that the evidence, viewed in the light most favorable to the finding, is sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that C.D.C. engaged in conduct or knowingly placed C.C. and S.C. with persons who engaged in conduct that endangered their physical or emotional well being.

7

Although there is conflicting evidence that C.D.C. was seeking employment, that she would not go back to the Longview area if the children were returned to her care, and that she no longer had a drug problem, the trial court could have resolved this conflict in favor of its finding. Although there is some disputed evidence, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that C.D.C. engaged in conduct or knowingly placed C.C. and S.C. with persons who engaged in conduct that endangered their physical or emotional well being. Accordingly, C.D.C.'s third and fourth issues are overruled.[2]

### DISPOSITION

The judgment of the trial court is ***affirmed***.

**SAM GRIFFITH**
Justice

Opinion delivered January 19, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[2] Under section 161.001, the State was required to prove only one ground of termination under subsection (1). Because we have concluded that the evidence is legally and factually sufficient to support termination of C.D.C.'s parental rights under subsection (1)(E), we need not determine the sufficiency of the evidence to support the trial court's findings under subsections (1)(D) and (1)(N). Thus, we do not address C.D.C.'s first, second, fifth, and sixth issues. Further, because we did not reverse the trial court's order of termination, we need not address C.D.C.'s seventh issue to determine whether the trial court properly named the Department as permanent managing conservator in the absence of termination of C.D.C.'s parental rights.