In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00314-CV
_____


IN THE INTEREST OF A.M.C., J.M.C. III, C.D.C. AND H.D.C.


_____

On Appeal from the 258th District Court
San Jacinto County, Texas
Trial Cause No. CV12641
_____

MEMORANDUM OPINION

This is a parental-rights termination case. Following a bench trial, the trial court signed a judgment terminating the rights of appellants, M.B. (Mother) and J.M.C. Jr. (Father) to their minor children, A.M.C., J.M.C. III, C.D.C. and H.D.C. The trial court found, by clear and convincing evidence, that statutory grounds existed for the termination and that termination would be in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (N), (O), (2) (West Supp. 2012). The trial court signed the order terminating parental rights in July 2012, replacing an order signed over a

year before that named the Department as the children's permanent managing conservator. *See id.* § 161.004 (West 2008).

On appeal, the Department has agreed that Mother's claim that she was not properly served by publication requires that the order terminating her rights be reversed. Although Father asserts the evidence is insufficient to support the trial court's decision terminating his rights, after carefully reviewing the evidence, we conclude that the evidence is sufficient to support the trial court's decision terminating Father's parental rights. Based on our review, we affirm the judgment terminating Father's rights, but we reverse the judgment terminating Mother's rights and remand that part of the case to the trial court for a new trial.

Service on Mother

In their first two issues, Mother and Father argue that Mother was not properly served by publication. According to Mother, the record fails to establish that the Department exercised diligence in its efforts to locate her or that the Department complied with the provisions of section 161.208 of the Family Code. *See id.* § 161.208 (West 2008). In the absence of personal service on the missing parent, section 161.208, requires the Department to show that it exercised diligence in locating a missing parent and a relative of that parent before it can be named as the permanent managing conservator of a child. *See id.* §§ 161.107, 161.208 (West 2008). "A lack of diligence

makes service by publication ineffective." *In re E.R.*, No. 11-0282, 2012 WL 2617604, at *8 (Tex. July 6, 2012).

The Department concedes that no affidavit establishing due diligence exists in the record. It has joined Mother's request asking that we grant Mother a new trial. We sustain Mother's first issue; accordingly, we do not address the parties other arguments concerning the termination of Mother's parental rights. *See* Tex. R. App. P. 47.1.

Adequacy of Department's Petition

In addition to Father's first two issues, which argue Mother was not properly served with process reasonably calculated to give her notice of the Department's petition, Father's third issue asserts the trial court admitted evidence that was not supported by the Department's petition. According to Father, the trial court erred in admitting evidence that addressed Father's conduct prior to March 2011, the date the trial court initially entered a judgment denying the Department's petition seeking to terminate Father's parental rights. According to Father, the Department could not rely on any of Father's conduct that occurred before March 2011 because the Department failed to specifically plead section 161.004 of the Family Code as a ground on which it was seeking to terminate Father's rights. *See* Tex. Fam. Code Ann. § 161.004 (authorizing a court to terminate a parent-child relationship after rendering an order that previously denied termination).

While the Department's live pleading does not expressly reference section 161.004 of the Family Code, the Department's petition requesting termination alleges that (1) the circumstances of the parents and the children had materially and substantially changed since March 2011, (2) the parents' rights should be terminated based on the grounds stated in the petition, and (3) the best interest of the children would be served by terminating Father's and Mother's parental rights.

When the circumstances of a party affected by an order denying termination have materially and substantially changed and termination is in a child's best interest, section 161.004 allows a court to terminate a parent's relationship with his child. *See id.* § 161.004(a)(2), (4). A substantial change requires a comparison of conduct that occurs at different points in time. Although the Department's petition did not specifically reference section 161.004, we conclude that its petition sufficiently notified Father that his conduct that occurred prior to March 2011 was relevant. In the absence of special exceptions, which Father did not file, we conclude that the petition at issue was sufficient to notify Father that the Department's legal theories included section 161.004 of the Family Code. *Id.*

Additionally, at the conclusion of the prior proceedings in March 2011, the parties expressly agreed that all evidence available to the Department during the March 2011 proceedings could be used in any future trial. Even absent that agreement, section 161.004(b) of the Family Code authorizes trial courts to "consider evidence presented at a

4

previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child." *Id.* § 161.004(b). During the trial that led to the order now on appeal, Mother withdrew her objection to the admission of evidence from the earlier proceeding and Father did not object to the admission of that evidence or claim surprise. We conclude that the trial court properly admitted the evidence relating to Father's conduct that occurred before the March 2011 proceedings. We overrule issue three.

Sufficiency Issues

*Legal Sufficiency*

In issues four through eight, Father challenges the legal and factual sufficiency of the evidence supporting the statutory grounds on which the trial court terminated Father's parent-child relationships. Father also challenges the trial court's best interest finding.

In a legal sufficiency review of an order terminating parental rights, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Our factual sufficiency review is only slightly less deferential to the factfinder, as under that standard we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* Under a factual sufficiency standard, the findings are sufficient unless, based on the entire record, "the disputed evidence that a reasonable factfinder could not

5

have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction[]" that the fact at issue was true. *Id.*

Neither parent appeared in person for the trial. At the bench trial, the trial court took judicial notice of the file, which included the Department's progress reports, family service plans, as well as the trial court's status hearing, permanency hearing, and placement review orders. *See* Tex. R. Evid. 201. During the trial that resulted in the termination order at issue, two Department investigators and a Department caseworker testified about their experience with the family and their efforts to reunify the family.

When the Department took possession of the children, Mother was using drugs; also, Mother and the children were homeless. Father was not living with them. The removal affidavit, signed by one of the investigators, reflects that the family was referred to the Department based on an allegation that Mother was not adequately supervising the children. According to the Department's investigator, the family was living in a small camper on a friend's property, Mother was trading her food stamps for methamphetamine, and she allowed the children to stay with various individuals while she was out at night using drugs. According to the investigator, Mother stated that she was homeless and unemployed, admitted that she was using marijuana and methamphetamine on weekends, and she agreed that she could not care for her children. Mother indicated that she intended to leave the children with some friends; however, the Department felt that the two persons Mother identified as possible caretakers were

6

"unsuitable as a long-term placement." Mother signed a note requesting that her children receive a temporary placement with the Department.

The evidence also reflects that in 2009, following an adversary hearing at which both Mother and Father appeared, the trial court appointed the Department as the temporary managing conservator of the children. The trial court also ordered that Mother and Father comply with the requirements in the Department's service plan and any amended service plan during the pendency of the suit. Subsequently, the Department offered the parents family service plans. The Department's caseworker testified that neither parent completed the respective plan. Father visited the children in the spring of 2011, but for months before and after those visits, Father was incarcerated. According to the caseworker, during periods that Father was not in jail, he failed to (1) maintain contact with the children's caseworker, (2) pass a random drug test, (3) submit to a psychological evaluation, (4) complete parenting classes, and (5) attend individual counseling as required by the service plan. According to the caseworker, the counselor stopped individual counseling because Father missed his appointments.

The caseworker also testified that Father failed to obtain and maintain safe and appropriate housing or stable employment, and he failed to visit the children after the Department became their permanent managing conservator. The evidence shows that Father was offered a new service plan after the trial in March 2011, but that service plan, effective after March 2011, is not in the record. According to the caseworker, most of the

7

services required by Father's current plan were the same as those required by his initial plan; however, Father never completed his plan. Additionally, the caseworker explained that Father did not pay child support as required by the trial court's order. Another caseworker, who took over Father's case, also testified that Father had not paid child support. According to that caseworker, Father never contacted her to visit the children, and Father had not contacted her in an effort to work on his service plan.

The records before the trial court concerning Father's incarceration do not present a complete picture to show when he was incarcerated or when he was free. Neither the Department's records nor its witnesses confirm Father's incarceration status immediately before the Department removed the children from Mother's possession. The records before the trial court indicate that as of February 2010, Father had been incarcerated, and that he had not made contact with the Department since his release. The Department's records reflect that Father signed a family service plan in October 2010, but he was arrested and jailed the following week. According to the caseworker, at one point, Father had pending criminal matters in two counties. The Department's records also reflect that in December 2010, the Department reported that Father was residing in the Liberty County Jail on an accusation of a "shoplifting" offense. From the records before the trial court, we are unable to determine with precision when Father was not in jail, as those periods relate to Father's failure to visit the children.

8

Two witnesses, a Department supervisor and the children's foster mother, testified about the children's current placement and the Department's future plans for the children. The children, at the time of the 2012 trial, were between eight and fourteen years old. The supervisor testified that the Department's permanency goal is unrelated adoption. The foster family went through the fostering process for these children. When the trial occurred, the children had been living with the foster family for approximately one year. The supervisor testified that the children had bonded with the foster family and expressed a desire to be adopted by them. According to the supervisor, terminating the parents' rights would serve the best interests of the children. The foster mother, a school teacher, stated that the children came to her "highly unstructured." She explained that she had set boundaries and established consequences, with a goal to firmly instill self-esteem and faith, which would allow the children to become independent and productive.

Although Father groups his factual and legal sufficiency arguments together, we will address Father's legal sufficiency arguments first. In the case before us, none of the details regarding Father's incarceration are contained in the record. The record suggests Father experienced pre-trial incarceration while the children were in the Department's custody; however, other than a mention of an October 2010 shoplifting accusation in the December 2010 permanency report, the reasons that Father may have been incarcerated are unknown, as the Department did not introduce the accusations nor did it present any evidence regarding Father's guilt. While Mother's admitted drug use is a fact the trial

9

court could consider in deciding that Mother had not been adequately supervising the children, Father was not living with the children when Mother's drug use allegedly occurred, and the Department offered no evidence to show whether Father was aware of the children's living conditions or that Mother was using drugs when the children were removed from Mother's custody.

The Department bears the burden of showing, by clear and convincing evidence, that "the parent engaged in certain proscribed conduct, as specified in the Family Code, and that termination is in the best interest of the children." *In re E.N.C.*, No. 11-0713, 2012 WL 4840710, at *1 (Tex. Oct. 12, 2012). Evidence of a parent's awareness that the children are being neglected or are living in unsanitary or dangerous conditions can support a finding of endangerment. *In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.). To meet its burden of establishing grounds for Father's termination by clear and convincing evidence, the Department must do more than introduce evidence creating a mere suspicion that would require us to guess that Father, even though he was not living in the home with Mother and the children, must have known of Mother's alleged conduct. *See In re E.N.C.*, 2012 WL 4840710, at *8.

Additionally, incarceration accompanied by continued drug use when a parent has agreed to comply with a family service plan can be evidence that allows a factfinder to conclude that a parent has endangered a child. *See Latham v. Dep't of Family & Protective Servs.*, 177 S.W.3d 341, 348 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

10

However, Father's incarceration, standing alone, does not constitute endangerment. *See Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). In this case, it appears that Father was in jail at various times because he had been accused of committing a crime; there is no evidence that he committed the acts that resulted in his arrest or that a voluntary course of conduct had resulted in his incarceration. Finally, while the testimony showed that Father failed to pass a drug test, the test results are not in the record, nor does the evidence admitted during the trial show that Father tested positive for an illegal substance. We recognize that a parent's use of narcotics and its effect on the parent's abilities "to parent may qualify as an endangering course of conduct." *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Nevertheless, the record in this case fails to show narcotic use or how the drug for which Father tested positive had the effect of endangering the child.

The State did not fully develop the record regarding Father's alleged drug use or Father's alleged criminal history. Considering the entire record in the light most favorable to the Department, the factfinder could not reasonably have formed a firm conviction or belief that Father endangered the children or knowingly allowed them to remain in endangering conditions. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E). We sustain issues four and five.

11

Nevertheless, legally sufficient evidence supports two of the grounds upon which the trial court relied in terminating Father's parental relationships with his children—constructive abandonment and violating the family service plan. *See id.* § 161.001(1)(N), (O). Constructive abandonment may be established by proof that the parents visited the children infrequently while in the Department's custody. *See In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.). After Father was released from confinement, the evidence reflects that he saw the children infrequently. The evidence regarding the Father's lack of contact with the children allowed the trial court to reasonably conclude that Father had failed to maintain contact with the children and the Department as required by the family service plan. Failure to comply with each of the conditions for return under a family service plan supports a trial court's termination finding. *See In re T.T.*, 228 S.W.3d 312, 319-20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Additionally, the family service plan required Father to maintain contact with the caseworker, submit to a psychological examination, obtain and maintain appropriate housing, resolve any pending criminal matters, and comply with the child support order. Father accomplished none of these requirements.

Father argues that the evidence does not support the termination of his rights for failing to comply with the family service plan because the children had been living with Mother and she asked the Department to assume their care. The trial court's order for protection includes a finding that the children were removed pursuant to section 262.104

12

of the Family Code. *See* Tex. Fam. Code Ann. § 262.104 (West 2008) (taking possession of a child in emergency without a court order). Mother consented to the initial removal of the children, but the fact that Mother admitted she could not adequately care for the children does not preclude a finding that the children were removed due to neglect. *See generally id.* § 161.001(1)(O). Moreover, the children need not be removed from the parent who failed to comply with the court order. *See In re S.N.*, 287 S.W.3d 183, 188-90 (Tex. App.—Houston [14th Dist.] 2009, no pet.), *contra Tex. Dep't of Family & Protective Servs. v. Silva*, No. 01-08-00195-CV, 2009 WL 276782, at *8 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, no pet.) (mem. op.) (holding trial court did not err in granting directed verdict for one parent when evidence established the child was removed from the other parent). Here, the children were in Mother's possession when the Department intervened; by taking the children into its possession and by obtaining an order for substitute care of the children after a full adversary hearing, the Department effectively removed the children from both parents. *See* Tex. Fam. Code Ann. § 262.201 (West Supp. 2012).

The evidence also allowed the trial court to conclude that Father made no effort to provide a safe and stable home environment. The evidence further shows that for a year the children had been living together and had bonded with a foster family, and that the children and the foster family desired to make the arrangement permanent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). There is some evidence from which the

trial court could rationally form a firm belief or conviction as to at least one of the grounds for termination. *See* Tex. Fam. Code Ann. § 161.001(1)(N), (O).

Given all of the evidence before the trial court, and considering the evidence in the light most favorable to the trial court's order, we conclude that the trial court could reasonably form a firm conviction that termination was in the best interest of the children. *See id.* § 161.001(2). With respect to Father's legal sufficiency arguments advanced in issues six through eight, we hold the trial court's findings are supported by legally sufficient evidence.

*Factual Sufficiency*

Next, we address the factual sufficiency arguments that Father raises in his appeal as those relate to Father's having violated the family service plan and to his constructive abandonment of the children. In reviewing the trial court's termination findings, we are to determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Father argues that the Department failed to establish that it made reasonable efforts to return the children, a requirement necessary to establish a claim of constructive abandonment. *See* Tex. Fam. Code Ann. § 161.001(1)(N).

The February 2010 family service plan, which Father signed in October 2010, is the only plan the trial court admitted into evidence. The caseworker testified that the parents received new family service plans after the Department became the permanent

managing conservator in March 2011, but the Department did not offer the new plans into evidence during the trial. Although Father contends the record does not establish that he received a copy of the new family service plan or that he knew of its existence, the Department produced a permanency conference participation list dated March 31, 2011; according to the caseworker, at that conference, the requirements of the new plan were explained to the parents in detail. Thus, there is some support for the trial court's implicit finding that Father was aware of the terms of his family service plan.

Father also challenges the trial court's finding that he failed to visit his children on a regular basis, arguing that he is excused from the requirement to have regular visits because the record shows that he was incarcerated. However, the evidence shows that Father was not incarcerated during some of the periods that the parents were no longer the managing conservators of the children, and that he did not visit them regularly when he was not incarcerated. The testimony at the termination hearing allowed the trial court to conclude that Father failed to visit the children regularly, and failed to maintain contact with the Department as required by the family service plan. Although the execution of a new family service plan was disputed, the trial court could believe the caseworker when she stated Father was offered a new family service plan that continued the requirements of the previous plan, that Father was aware of the plan's requirements because they were discussed with Father, and that Father failed to complete the service plan.

Father also argues that without evidence in the record regarding his living conditions at the time of trial, the Department failed to show that he was unable to provide the children with a safe environment. Nevertheless, a parent's inability to provide a safe environment may be established through circumstances such as a vague and unstable employment history, a lack of a permanent residence when a parent is out of prison, and a parent's drug use. *See In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). The caseworker testified that because Father did not obtain and maintain safe and appropriate housing or stable employment after the children were placed in the Department's custody, he failed to comply with the family service plan's requirement that he obtain stable housing and employment. Additionally, there is no evidence that Father made any effort to obtain housing or a caretaker for the children.

In summary, the evidence that Father disputes is not so significant that the trial court could not have reasonably formed a firm belief or conviction that Father constructively abandoned his children and that Father failed to comply with the provisions in the trial court's orders as required to allow him to have the children returned. *See* Tex. Fam. Code Ann. § 161.001(1)(N), (O).

Father also challenges the factual sufficiency of the evidence supporting the trial court's best interest findings. Father notes that the children were well within the age range required to be allowed to express their desired living arrangement with the court; however, the trial court did not interview them in chambers and they were not called to

16

testify. *See Holley*, 544 S.W.2d at 371-72. No party asked the trial court to interview the children in chambers during the trial; even without an in chambers interview, the trial court could accept as credible the supervisor's unchallenged testimony that after living together for a year the children had bonded with the foster family and had expressed a desire to be adopted by them. The evidence regarding what the children desired was sufficient to allow the trial court to conclude that the children desired to continue to reside with their foster family.

We conclude the record contains factually sufficient evidence from which the trial court could form a firm conviction or belief that terminating Father's parental rights is in the best interest of the children. Regarding Father's parental rights, the record contains factually sufficient evidence to support at least one of the trial court's termination findings and its best interest finding. *See J.F.C.*, 96 S.W.3d at 266.

Endangerment Finding

In Father's ninth issue, he argues that we should remand the case to the trial court to remove the endangerment findings. While we agree that the evidence is legally insufficient to support a finding that Father's conduct endangered the children, a remand for entry of a new judgment is unnecessary. On sustaining a challenge to the legal sufficiency of the evidence, we are allowed to remove the endangerment finding and render the judgment the trial court should have rendered. *See* Tex. R. App. P. 43.3.

Conclusion

We modify the trial court's judgment to delete the findings that J.M.C. Jr. "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;" and "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children[.]" As modified, we affirm the judgment terminating the parental rights of J.M.C. Jr. to his minor children A.M.C., J.M.C. III, C.D.C. and H.D.C. We reverse the judgment terminating the parental rights of M.B. to her minor children A.M.C., J.M.C. III, C.D.C. and H.D.C. We remand the case to the trial court for a new trial on the Department's petition to terminate the parental rights of M.B.

AFFIRMED AND MODIFIED IN PART; REVERSED AND REMANDED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on September 26, 2012
Opinion Delivered December 6, 2012
Before McKeithen, C.J., Gaultney and Horton, JJ.

18